# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-2512 & 08-2443

UNITED STATES OF AMERICA,

*Plaintiff-Appellee/*
*Cross-Appellant,*

*v.*

BERNARD ELLIS,

*Defendant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 756—**Wayne R. Andersen**, *Judge.*

No. 08-4055

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BERNARD ELLIS,

*Defendant Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:05 CR 131—**Robert L. Miller, Jr.**, *Judge*.

ARGUED JUNE 3, 2009—DECIDED SEPTEMBER 17, 2010

Before EASTERBROOK, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*.  Bernard Ellis was the chief enforcer for a notorious Chicago street gang. He was also a felon, so to arm himself and the members of his gang, Ellis would travel to Indiana and enlist others to buy firearms for him there. This illegal activity drew the attention of two separate United States Attorneys who took turns prosecuting him. In the Northern District of Illinois, Ellis was charged with and pleaded guilty to two counts of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). In the Northern District of Indiana, he was charged with four counts of the same offense—one of which involved the same guns as the Illinois case—and was convicted by a jury on these and five additional crimes stemming from various straw purchases of firearms. He appealed in both cases. The government cross-appealed in the Illinois case to challenge the district court's sentencing decision.

We have consolidated the appeals for disposition because they raise one common and several related questions. The common question is whether Ellis's Indiana conviction for felony intimidation under section 35-45-2-1 of the Indiana Code qualifies as a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The Illinois district judge answered this question "no" and therefore declined to apply the ACCA's 15-year minimum sentence. The Indiana judge disagreed and held that the intimidation conviction was a "violent felony" because it "has as an element the . . .

threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i). Ellis challenges this determination and makes myriad other claims of error in the Indiana case; he also contends his sentence in the Illinois case is unreasonable. The government's cross-appeal in the Illinois case contests the district court's violent-felony determination and contends that the 90-month sentence imposed in that case is too low.

We affirm in part and reverse in part. On the sentencing issue common to both cases, we affirm in the Illinois case and reverse in the Indiana case. Ellis's conviction for felony intimidation under Indiana law does not have "as an element the . . . threatened use of physical force against the person of another" and therefore does not qualify as a violent felony under the primary definition of the term. The government has not contended that it qualifies under the residual clause of the violent-felony definition, so Ellis is not subject to the enhanced penalties applicable to armed career criminals under the ACCA or the sentencing guidelines. We also reverse, on double-jeopardy grounds, Ellis's conviction on one of the § 922(g)(1) counts in the Indiana case; it was based on Ellis's possession of the same guns as in the Illinois case, and the government has not sufficiently established a break in constructive possession. We reject all remaining arguments and remand the Indiana case for resentencing.

## I. Background

### A. Ellis's Crimes

Ellis was the chief enforcer for the Chicago Gangster Disciples street gang and in that role obtained firearms for himself and other members of this violent street gang. Because he is a convicted felon, however, his possession of firearms is illegal, so he regularly arranged for others to make straw purchases of guns in Indiana. As charged in the Indiana case, on at least five occasions between 2003 and 2005, Ellis traveled to a gun store in Osceola, Indiana, and gave his girlfriend (or the girlfriends of two of his nephews) money to purchase firearms. The straw purchasers submitted false ATF[1] forms stating they were buying the guns for themselves. After each purchase Ellis took possession of the guns, returned to Chicago, and instructed the women to report them as stolen.

The ATF office in Chicago was alerted to these illegal transactions after the last one in June 2005. In late July 2005, federal agents went to Ellis's mother's house in suburban Chicago, where Ellis was then living, to question him about the straw purchases and other criminal activity. The agents told Ellis he was suspected of having guns, drugs, and money stored at the house. Ellis admitted he was a member of the Gangster Disciples, acknowledged he was an enforcer for the gang, and said that he always carried a gun for protection. He

---

[1] "ATF" refers to the federal Bureau of Alcohol, Tobacco, Firearms and Explosives.

also admitted to orchestrating an illegal purchase of two 9-millimeter handguns in Indiana in June 2005. One of these guns was in the house, and Ellis turned it over to the agents. The other gun, he explained, was then in the possession of a fellow gang member named "OG." Ellis offered to retrieve it for the agents. He then went to Chicago's South Side, retrieved the gun, and gave it to the agents. In August 2005 federal agents caught Ellis on audiotape giving a detailed and gruesome account of acts of torture and extortion he committed while shaking down Chicago drug dealers as an enforcer for the Gangster Disciples. The agents also learned of a plot by Ellis to carry out a home-invasion robbery of a Chicago fireman who was dealing cocaine on the side. They arrested Ellis before this robbery took place.

## B.  The Northern District of Illinois Prosecution

Prosecutors in the Northern District of Illinois charged Ellis with two counts of illegal firearms possession by a felon. *See* 18 U.S.C. § 922(g)(1). These counts centered on Ellis's possession of the two handguns from the June 2005 straw purchase that he turned over to the agents during the July 2005 interview. The government sought application of the ACCA's 15-year mandatory-minimum sentence based on Ellis's felony record, so Ellis requested a pre-plea "advisory opinion" from the district court on whether the ACCA applied. Ellis conceded that two of his prior convictions qualified as violent felonies under the ACCA; the question was whether his 2003 Indiana conviction for felony intimida-

tion was a violent felony. The district court "prelimi-
narily" ruled that this conviction was not a violent
felony because the state-court judge who sentenced Ellis
"did not really believe that Mr. Ellis engaged in or was
about to engage in any actual violent behavior."

Ellis then entered guilty pleas to the two § 922(g)(1)
counts, and at sentencing the judge affirmatively held
that Ellis's 2003 intimidation conviction was not a
violent felony under the ACCA. This meant that
neither the statutory 15-year minimum sentence nor the
enhancements in the sentencing guidelines applied;
without these adjustments, the advisory guidelines sug-
gested a sentence of 46 to 57 months. Based on Ellis's
substantial and violent criminal history and the need to
protect the public, the judge imposed an above-guidelines
sentence of 90 months.

## C.  The Northern District of Indiana Prosecution

While Ellis was in federal custody in Illinois, a grand
jury in the Northern District of Indiana indicted him
on nine crimes: five counts of aiding and abetting the
making of a false statement intended to deceive a
licensed gun dealer in violation of 18 U.S.C. §§ 2, 922(a)(6),
and 924(a)(2); and four counts of possession of a firearm
by a felon in violation of 18 U.S.C. § 922(g)(1). One of
the firearms possession counts—Count 9 in the indict-
ment—involved the same two guns as the Illinois pros-
ecution.

For the protection of the witnesses in the Indiana case,
the United States Attorney asked an Indiana magistrate

judge to seal the indictment during the pendency of the Illinois case. The judge did so, and the indictment remained sealed until shortly after Ellis was sentenced by the Illinois district court. It was unsealed in May 2008, more than two-and-a-half years after it was returned and more than five years after the 2003 straw purchases that formed the basis of five of the charges. So Ellis moved to dismiss on Sixth Amendment speedy-trial and statute-of-limitations grounds. The court denied these motions. The case was tried to a jury, and at the close of the evidence, Ellis moved to dismiss Count 9 on double-jeopardy grounds. The district court denied this motion, and Ellis was convicted on all counts.

At sentencing Ellis took the position that he could not be sentenced as an armed career criminal because the Illinois district court had already concluded his Indiana intimidation conviction was not a violent felony. The Indiana judge rejected this argument, noting that the government had appealed the Illinois district court's decision and therefore it lacked the finality necessary to trigger issue preclusion. On the merits the Indiana judge disagreed with his Illinois counterpart and concluded that Ellis's state-court conviction for felony intimidation was indeed a violent felony because it has "as an element . . . the threatened use of physical force against the person of another," as required by the first part of the statutory definition of the term. *See* 18 U.S.C. § 924(e)(2)(B)(i).

This determination, in combination with other factors, placed Ellis in Criminal History Category VI, and after

applying several other applicable adjustments (notably for possession of assault rifles and firearms with large-capacity magazines), the district court arrived at an advisory guidelines range of 360 months to life. The judge imposed concurrent sentences of 480 months on each of the felon-in-possession counts and concurrent sentences of 120 months on each of the false-statement counts.

## II. Discussion

Ellis has appealed in both the Illinois and Indiana cases, raising a host of challenges to his convictions and sentences.[2] In the Illinois case, he claims that his sentence is unreasonable. In the Indiana case, he reiterates his Sixth Amendment speedy-trial, statute-of-limitations, and double-jeopardy arguments, and also claims the district court committed several sentencing errors. As we have noted, the government filed a cross-appeal in the Illinois case, contesting the district court's determination that Ellis's Indiana conviction for felony intimidation is not a violent felony under the ACCA and arguing that the 90-

---

[2] Not all of Ellis's arguments merit discussion. He claims, for example, that the district court committed several evidentiary errors during the course of the jury trial on the Indiana charges. These arguments relate to evidence of Ellis's gang membership, rank, and activity; the admission of federal firearms tracing reports; and the prosecutor's inadvertent display to the jury of a photo of Ellis wearing jail clothing. We have considered these arguments and reject them as meritless.

month sentence is otherwise unreasonable. We take up Ellis's challenges to the Indiana convictions first, and then move to the parties' sentencing arguments.

## A. Challenges to the Indiana Convictions

### 1. Sixth Amendment Speedy-Trial Challenge

Ellis argues that the lengthy delay between his Indiana indictment and trial violated his right to a speedy trial under the Sixth Amendment. Ellis was taken into federal custody during the August 2005 arrest that pre-empted his plot to rob a Chicago firefighter who was trafficking in cocaine. Ellis's arrest set in motion the indictment and ensuing proceedings in the Northern District of Illinois. In the meantime, in November 2005 the United States Attorney in the Northern District of Indiana obtained a separate indictment against Ellis. As we have noted, however, on the government's motion and for the protection of the witnesses, the indictment was sealed the same day it was returned.

In August 2007 Ellis's attorney learned of the sealed Indiana indictment and in February 2008 invoked Ellis's Sixth Amendment right to a speedy trial. In May 2008—about a week and a half after the proceedings in the Illinois case concluded—the Indiana indictment was unsealed. Ellis moved to dismiss on Sixth Amendment speedy-trial grounds. The district court denied the motion, concluding that Ellis had suffered no prejudice from the delay. Ellis's trial on the Indiana charges began on July 22, 2008, about two months after the indictment was unsealed but 32 months after it was returned.

We review de novo the court's denial of Ellis's motion to dismiss, but accept the court's underlying factual findings unless they are clearly erroneous. *United States v. Loera*, 565 F.3d 406, 411 (7th Cir. 2009). The Sixth Amendment guarantees an accused the right to a "speedy and public trial." U.S. CONST. amend. VI. To determine whether a pretrial delay violates this right, the Supreme Court has instructed us to weigh four factors: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992). As to the first factor, "[w]e have considered delays that approach one year presumptively prejudicial." *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007). The 32-month delay at issue here plainly exceeds this threshold. The remaining factors, however, outweigh the effect of the delay in this case.

Ellis's prosecution on the Illinois charges fully accounted for the delay and justified putting the Indiana case on hold. Although the postponement was lengthy, nothing suggests that the government was dragging its feet or was otherwise at fault. *See United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir. 1998) ("Valid reasons for delaying a trial are weighted in favor of the Government."). It is generally accepted that a delay occasioned by the prosecution of the defendant in another jurisdiction is not a basis for a dismissal on constitutional speedy-trial grounds. *See, e.g., United States*

*v. Watford*, 468 F.3d 891, 903 (6th Cir. 2006); *United States v. Brown*, 325 F.3d 1032, 1035 (8th Cir. 2003); *Grimmond*, 137 F.3d at 830; *United States v. Thomas*, 55 F.3d 144, 150-51 & n.6 (4th Cir. 1995).

Although many cases considering the speedy-trial implications of separate prosecutions involve one state and one federal prosecution, the practical problems of simultaneous criminal proceedings in separate jurisdictions are the same regardless of whether the sovereign prosecuting each case is the same or different. In both situations the administrative difficulties and safety concerns presented by parallel prosecutions generally justify delaying the second case. *See Thomas*, 55 F.3d at 150-51 (noting that having "to increase inmate transportation back and forth between [two courts carries] consequent additional safety risks and administrative costs, and [it] generally . . . throw[s] parallel . . . prosecutions into confusion and disarray"); *see also United States v. Kimberlin*, 805 F.2d 210, 225-26 (7th Cir. 1986) (detailing confusion that ensued from simultaneous federal prosecutions). In this case the government prudently opted for consecutive prosecutions and brought the Indiana charges to trial soon after the Illinois case was concluded.

Nor was Ellis actually prejudiced by the delay. He argues that any delay is inherently prejudicial because it provokes anxiety, *see Barker v. Wingo*, 407 U.S. 514, 532 (1972) (noting the prejudice factor is designed "to minimize anxiety and concern of the accused"), but here the district court reasonably determined that the effect of this factor was extremely limited. Importantly, Ellis

did not know about the sealed indictment until August 2007. Beyond his general claim of delay-based "anxiety," Ellis has not identified a more concrete form of prejudice attributable to the gap in time between indictment and trial. Finally, we note that although Ellis properly and "in due course" invoked his Sixth Amendment speedy-trial right, this factor does not contribute much to the balance of equities, and certainly not enough to warrant dismissal. As we have explained, the delay in the Indiana case was entirely attributable to the ongoing proceedings in the Northern District of Illinois, and Ellis's argument for an earlier trial must be considered against the practicalities of the situation. *Cf. id.* at 531 ("Whether and how a defendant asserts his right is closely related to the other factors we have mentioned."). Under the circumstances here, the balance of factors is rather straightforward. Although the delay in bringing the Indiana case to trial was lengthy, we conclude that the district court properly denied Ellis's motion to dismiss the indictment on Sixth Amendment speedy-trial grounds.

### 2. *Statute-of-Limitations Challenge*

Ellis next argues that Counts 1 through 5 of the Indiana indictment were time-barred under the statute of limitations, *see* 18 U.S.C. § 3282(a), and should have been dismissed. Section 3282(a) provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found . . . within five years next after such offense shall have been committed." Although

the grand jury returned the indictment in November 2005, well before the five-year limitations period expired, the indictment was immediately sealed and not unsealed until May 2008, more than five years after the 2003 events that formed the basis for Counts 1 through 5. Ellis's statute-of-limitations challenge turns on how the sealing of an indictment affects when an indictment is "found" within the meaning of § 3282(a).

The circuits are divided on whether the sealing of an indictment affects when the indictment is "found" for purposes of the statute of limitations. The Tenth Circuit has held that an indictment is "found" under § 3282(a) whenever it is returned by the grand jury; sealing the indictment has no effect on this date. *United States v. Thompson*, 287 F.3d 1244, 1248-52 (10th Cir. 2002). But other circuits have held that sealing matters, at least in one sense; these circuits have held that an indictment is not "found" for purposes of § 3282(a) if it was *improperly* sealed and the improper sealing prejudiced to the defendant. *See, e.g., United States v. Bracy*, 67 F.3d 1421, 1426 (9th Cir. 1995); *United States v. Sharpe*, 995 F.2d 49, 51-52 (5th Cir. 1993) (per curiam); *United States v. Muse*, 633 F.2d 1041, 1043-44 (2d Cir. 1980) (en banc). We have not affirmatively taken a position on the question, *cf. United States v. Pearson*, 340 F.3d 459, 464 (7th Cir. 2003) (citing *Thompson* but not mentioning the circuit split), *vacated on other grounds sub nom., Hawkins v. United States*, 543 U.S. 1097 (2005), and there is no need to do so in this case. Even under the interpretation of § 3282(a) most favorable to Ellis—that improper sealing makes a difference if it prejudiced him—his statute-of-

limitations argument fails. The Indiana indictment was properly sealed.

Under Federal Rule of Criminal Procedure 6(e)(4),[3] a district court's power to seal an indictment is broad; sealing an indictment is generally permitted when it is in the public interest or serves a legitimate law-enforcement purpose. *See Worrell Newspapers of Ind., Inc. v. Westhafer*, 739 F.2d 1219, 1222-23 (7th Cir. 1984) ("[C]ourts have the power to seal indictments or informations, under appropriate circumstances, to facilitate the apprehension of criminals."); *Bracy*, 67 F.3d at 1426 (holding that the need to protect potential witnesses from a violent gang may justify the sealing of an indictment); *United States v. DiSalvo*, 34 F.3d 1204, 1218 (3d Cir. 1994) ("An indictment may be sealed for any legitimate law enforcement reason or where the public interest requires it."); *United States v. Southland Corp.*, 760 F.2d 1366, 1380 (2d Cir. 1985) ("[G]reat deference should be accorded to the discretion of the magistrate [to seal an indictment], at least in the absence of any evidence of substantial prejudice to the defendant."). Here, the indictment was sealed for the security of the witnesses and to guard against potential witness intimidation or tampering. These reasons are legitimate and compellingly supported by the record.

---

[3] The Rule reads in relevant part: "The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial." FED. R. CRIM. P. 6(e)(4).

Ellis was the chief enforcer of a violent street gang and had an acknowledged history of torture, extortion, and shakedowns. Before he was arrested, he had threatened several witnesses. Under these circumstances, it was manifestly reasonable for the government to suspect that Ellis might enlist fellow gang members to target witnesses in the Indiana case during the pendency of the Illinois prosecution. Ellis contends that sealing the indictment was not necessary because some of the witnesses had themselves been indicted. We are not persuaded. That some of the witnesses in the Indiana prosecution were under public indictment does not mean they could not be targets of intimidation or retaliation by Ellis or his gang associates. Sealing the indictment was a reasonable measure to protect the identity, security, and testimony of the witnesses in the Indiana case.

### 3. Double Jeopardy as to Count 9 in the Indiana Prosecution

Ellis was prosecuted in the Illinois case for unlawfully possessing the two handguns from the June 2005 Indiana straw purchase that he turned over to the ATF agents in Chicago on July 29, 2005. Count 9 in the Indiana case charged Ellis with illegally possessing the same two firearms in Indiana after they were acquired in the straw purchase at the Osceola gun store. Ellis argued in the district court that punishing him twice for possessing the same guns violated the Double Jeopardy Clause. The district court agreed as to the handgun he kept at his mother's house in Illinois; that gun

never left his possession after he acquired it in Indiana. But the court rejected Ellis's double-jeopardy claim with respect to the second gun from the June 2005 straw purchase. Because Ellis retrieved *that* gun from a fellow Gangster Disciple before giving it to federal agents, the court held there was a "break in possession that is sufficient to satisfy the . . . double-jeopardy clause of the Constitution." The court explained that Ellis "had the [second] gun in June, . . . gave it to somebody else and got it back. Getting it back was a crime for which Mr. Ellis has been convicted in Illinois . . . ."

We review de novo the district court's denial of Ellis's motion to dismiss Count 9. *See United States v. Gilmore*, 454 F.3d 725, 729 (7th Cir. 2006). The Double Jeopardy Clause of the Fifth Amendment prohibits "punishing twice, or attempting a second time to punish criminally, for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995) (emphasis removed) (quotation marks omitted). The § 922(g)(1) felon-in-possession crime is a continuing offense. *See United States v. Fleischli*, 305 F.3d 643, 658 (7th Cir. 2002) ("Possession of a firearm is a continuing offense which ceases only when the possession stops."), *superseded by statute on other grounds.* As such, the Double Jeopardy Clause prohibits punishing Ellis twice for a continuous possession of the same gun, even under a theory that he is being charged for different "moments" of possession. *See United States v. Hope*, 545 F.3d 293, 296 (5th Cir. 2008). Accordingly, if Ellis maintained possession of the second handgun from the June 2005 straw purchase in Indiana until he turned it over to federal agents the following month in

Illinois, double jeopardy prohibits a second punishment in the Indiana case after his conviction and sentence for unlawfully possessing the same gun in Illinois.

As it did in the district court, the government argues that Ellis's act of retrieving the second gun from his gang associate establishes that he committed two separate crimes rather than one continuous crime of possession, citing *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002). In *Conley* we held that a felon may be charged with two crimes of unlawful possession of the same firearm under § 922(g)(1) if he possessed the gun, knowingly relinquished possession, and then reacquired possession of the gun. *Id.* at 470-71. Possession may be actual or constructive, and "there is no legal difference . . . between actual and constructive possession." *United States v. Moses*, 513 F.3d 727, 733 (7th Cir. 2008); *see also Conley*, 291 F.3d at 468 n.2. Therefore, a felon who unlawfully possesses a firearm and then relinquishes *actual* possession while maintaining *constructive* possession has committed only one violation of § 922(g)(1). Stated differently, a felon in this situation—one who maintains constructive possession of a firearm while another has actual possession of it—does not commit a new crime when he regains actual possession of the firearm. *See United States v. Jones*, 403 F.3d 604, 606 (8th Cir. 2005) (handing firearm momentarily to officers does not establish interruption of constructive possession); *United States v. Horodner*, 993 F.2d 191, 193 (9th Cir. 1993) (leaving firearm with repairman for one week does not establish break in constructive possession).

Therefore, to charge and punish a defendant for more than one § 922(g)(1) offense for separate "possessions" of the same gun, there must be a relinquishment of both actual *and* constructive possession of the gun before it is reacquired. *See United States v. Lloyd*, 71 F.3d 1256, 1267 (7th Cir. 1995). Here, Ellis argues that he committed only one continuous § 922(g)(1) offense involving *both* of the firearms from the June 2005 straw purchase—the one he kept at his mother's house and the one that was in OG's actual possession at the time he retrieved it and gave it to the agents. Because he was convicted and punished for illegally possessing the guns in Illinois, he cannot be punished a second time in Indiana unless the government can establish that he relinquished *constructive* possession of the second firearm while it was in OG's *actual* possession.

Our cases hold that a gang leader constructively possesses a gang firearm when he has knowledge of the firearm's existence and intentionally directs the actions of those who physically possess it. *United States v. Rawlings*, 341 F.3d 657, 659 (7th Cir. 2003) ("[A] drug lord who directs his enforcers to arm themselves is, if they do so, a constructive possessor of the arms. He is acting through agents, just as in the case . . . of the felon who asks his companion to hold his gun for him." (citations omitted)); *United States v. McAnderson*, 914 F.2d 934, 947-48 (7th Cir. 1990) (upholding a finding of constructive possession where the gang leader "was aware of the violence that had been planned and knew that the weapons in the [gang's] possession would be used to commit [violent] acts"); *see also Lloyd*, 71 F.3d at 1266

("Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." (quotation marks omitted)). As the chief enforcer for the Gangster Disciples, Ellis certainly was a gang leader, but the district court held that he could not have had "constructive possession of every firearm in the possession of a member of the Gangster Disciples."

We think this overstates the inquiry. The pertinent question is not whether Ellis was in constructive possession of *every* firearm in the Gangster Disciples' arsenal but whether he relinquished constructive possession of *this particular* firearm while it was in the actual possession of OG, his gang associate. And on this question the record is scanty and the government's argument nonexistent. We do not know how long Ellis possessed the gun after the straw purchase in June 2005. We do not know when he gave it to OG (or how OG otherwise came into actual possession of it) or what OG's possessory "rights" were with respect to the firearm. We *do* know that Ellis was able to reacquire actual physical possession of the gun on a moment's notice on July 29 and then permanently deprive OG of possession of it. The government has focused its argument exclusively on the break in *actual* possession of the firearm and does not address the question of constructive possession at all.

Moreover, *Conley*, on which the government heavily relies, is factually distinguishable from this case. There,

the defendant was indicted for two violations of § 922(g)(1) for possessing the same shotgun on two dates about six months apart. *Conley*, 291 F.3d at 467. The shotgun in question was not owned by the defendant but by a friend who lived in a trailer behind the defendant's house. The first count in the indictment charged the defendant with possessing the shotgun on July 7, 1999; the evidence established that on that date he had fired it to scare a group of teenagers off his property. The second count charged him with possessing the shotgun about six months later, in January 2000. Regarding this second possession, the evidence established that the owner of the shotgun had resumed possession of it sometime after the July 7 incident and retained possession until the fall when he moved away and abandoned the gun to the defendant. During the execution of a search warrant on January 27, 2000, the shotgun was found in the defendant's padlocked storage shed, along with many other items of his property. *Id.* at 467-68. This evidence, we held, established an interruption in the defendant's possession of the shotgun sufficient to establish two separate crimes and therefore permit more than one punishment for distinct acts of possessing the same firearm. *Id.* at 470-71.

*Conley* thus involved two separate episodes of *actual* possession of the same firearm; the question was whether there was a sufficient break between the two for double-jeopardy purposes. Constructive posession was not at issue. This case is different. Here, it is undisputed that Ellis relinquished *actual* possession of the second gun after he acquired it from the straw pur-

chaser in June 2005; the important question for double-jeopardy purposes is whether he relinquished *constructive* possession as well. As we have noted, the government has not discussed this question at all; it has not addressed, that is, whether the evidence establishes that Ellis intended either to *relinquish* or *maintain* control over the gun while OG had it. As far as we can tell, to the extent the evidence points in one direction or another, it appears to suggest that Ellis intended to maintain dominion and control over the gun. He knew exactly where it was kept and was able to get it back from OG in very short order and deprive him permanently of it.

In any event, we are hard-pressed to credit the opposite view of the evidence when the government has neither made nor supported an argument in favor of it.[4]

---

[4] Our cases are not clear about who has the burden in a double-jeopardy claim of this type. In *United States v. Dortch*, 5 F.3d 1056, 1061 (7th Cir. 1993), we said that "at the post-trial stage the defendant alone bears the burden of proving that he or she has been charged with the same offense twice." On the other hand, in *United States v. Doyle*, 121 F.3d 1078, 1089 (7th Cir. 1997), we applied a burden-shifting approach and held that "[t]he defendant first must set out a prima facie case that the second indictment charges him with the same offense for which he has already been convicted. Then, the burden switches to the government to demonstrate, by a preponderance of the evidence, that the two indictments charged separate offenses." *Conley* considered the double-jeopardy question—whether there was an interruption in the defendant's

(continued...)

In the face of this silence, we conclude that double jeopardy precludes punishing Ellis twice under § 922(g)(9)—first in the Illinois case and then in the Indiana case—based on his possession of the same gun. His motion to dismiss Count 9 should have been granted.

---

[4] (...continued)
possession of the firearm—to be part of the government's general burden of proof at trial. *United States v. Conley*, 291 F.3d 464, 470-71 (7th Cir. 2002). ("Because the Government was required to convince the jury beyond a reasonable doubt of Conley's possession of the shotgun on two separate dates, as two distinct courses of conduct, the Government established the elements of two separate crimes."). The disagreement over the applicable standards is not limited to this circuit. *See, e.g.*, *United States v. Hope*, 545 F.3d 293, 296 (5th Cir. 2008) ("To prevail on a double jeopardy argument, the defendant bears the burden to establish, both in law and in fact, the *commonality* of the offenses." (quotation marks omitted)); *United States v. Olmeda*, 461 F.3d 271, 282 (2d Cir. 2006) ("In considering double jeopardy challenges to successive conspiracy prosecutions, this court has identified a shifting burden of proof."); *United States v. Jones*, 403 F.3d 604, 606 (8th Cir. 2005) ("The government argues that the record will support a finding beyond a reasonable doubt that Mr. Jones knowingly lost and then regained possession of the firearm . . . ."); *see also United States v. Guzman*, 85 F.3d 823, 827 n.3 (1st Cir. 1996) (recognizing other circuits' various positions). As we have noted, the government relied entirely on *Conley* in its brief and at oral argument acknowledged that it had the burden of establishing factually separate offenses beyond a reasonable doubt. We will hold the government to this concession.

**B.  Sentencing Challenges**

   1.  *Sentencing Enhancement Under the Armed Career Criminal Act*

The two district courts disagreed over whether Ellis's Indiana conviction for felony intimidation qualifies as a third predicate violent felony for purposes of the enhanced penalties in the ACCA and the corresponding sentencing guidelines. This is the primary issue in Ellis's challenge to his sentence in the Indiana case and prompted the government's cross-appeal in the Illinois case.

   Ordinarily, a defendant who violates § 922(g)(1) may be "imprisoned not more than 10 years." 18 U.S.C. § 924(a)(2). But under the ACCA, a defendant who violates § 922(g)(1) "shall be . . . imprisoned not less than fifteen years" if he "has three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). As relevant here, the ACCA defines "violent felony" as any crime punishable by more than one year in prison and that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). A defendant who is subject to the ACCA's enhanced penalties as an armed career criminal is also subject to higher offense and criminal-history levels under the sentencing guidelines. *See* U.S.S.G. § 4B1.4.

   The parties agree that two of Ellis's convictions—for robbery and armed robbery—are violent felonies. Their disagreement centers on whether his Indiana conviction for felony intimidation under IND. CODE § 35-45-2-1

qualifies as a third violent felony. A person is guilty of intimidation under Indiana law if he "communicates a threat to another person" with one of three prohibited intents; the one that is relevant here is "the intent . . . that the other person be placed in fear of retaliation for a prior lawful act." IND. CODE § 35-45-2-1(a)(2). The statute also defines "threat" in several different ways. The relevant definition in this case is "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person." *Id.* § 35-45-2-1(c)(1). Although Indiana's intimidation offense is generally a misdemeanor, the crime is a felony (and carries a possible prison term of more than one year) if the threat is directed at a law-enforcement officer. *Id.* § 35-45-2-1(b)(1)(B)(i).

Ellis pleaded guilty to a state-court information charging him with Class D felony intimidation for threatening to "harm" a police officer who had arrested him. As we have noted, this implicates the version of the intimidation offense that requires an "expression . . . of an intention to unlawfully injure" another "with the intent . . . that the other person be placed in fear of retaliation for a prior lawful act." IND. CODE § 35-45-2-1(a)(2) and (c)(1). After reviewing the state-court record, the district judge in the Illinois case decided that Ellis's offense was not a violent felony because "the [state-court] judge did not really believe that Mr. Ellis engaged in or was about to engage in any actual violent behavior." The Indiana judge disagreed and held that a conviction for the offense described in subsections (a)(2) and (c)(1) of the Indiana statute "has as an element the

threatened use of physical force against another person" and therefore counts as a violent felony.[5] We review these determinations de novo. *United States v. Woods*, 576 F.3d 400, 408 (7th Cir. 2009).

A "categorical approach" applies to the determination of whether a crime qualifies as a violent felony under the ACCA. *See, e.g.*, *United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010); *Woods*, 576 F.3d at 403-04 . Under this approach "we 'look only to the fact of conviction and the statutory definition of the prior offense' rather than the 'particular facts disclosed by the record of con-

---

[5] Ellis argues that the Indiana district judge was precluded from considering the application of the ACCA to his intimidation conviction because the issue had already been decided by the Illinois district court. As a general matter, "[i]ssue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'" *Bobby v. Bies*, 129 S. Ct. 2145, 2152 (2009) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980)). It is unclear how the doctrine of issue preclusion applies in criminal sentencing. The Supreme Court has applied the doctrine to a jury's factual determinations necessary to an acquittal, *Ashe v. Swenson*, 397 U.S. 436, 443-45 (1970), but it has also suggested that the doctrine applies more narrowly in the criminal context than the civil context, *Standefer v. United States*, 447 U.S. 10, 22-25 (1980). We have uncovered only one case in which a federal circuit court applied issue preclusion at sentencing, and that was in a capital case. *See Delap v. Dugger*, 890 F.2d 285, 314-19 (11th Cir. 1989). Because we agree with Ellis's position on the merits, we need not decide the procedural issue here.

viction.'" *Dismuke*, 593 F.3d at 589 (quoting *Shepard v. United States*, 544 U.S. 13, 17 (2005) (internal quotation marks omitted)). A modified categorical approach applies when the relevant statute is divisible—that is, when the statute describes multiple crimes or one crime with multiple modes of commission. *Id.* This approach permits an "expand[ed] . . . inquiry into a limited range of additional material . . . in order to determine whether the jury actually convicted the defendant of (or, in the case of a guilty plea, the defendant expressly admitted to) violating a portion of the statute that constitutes a violent felony." *Id.* (internal quotation marks and emphasis omitted). This inquiry, however, is limited to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. Importantly, the point of the modified categorical approach is to determine which part of a divisible statute the defendant was convicted of violating, *not* to evaluate the actual facts of the underlying case. *Dismuke*, 593 F.3d at 589. As such, the Illinois judge's focus on whether Ellis had "engaged in or was about to engage in any actual violent behavior" was misplaced.

The Illinois judge reached the right result, however, if by the wrong route. Indiana's intimidation statute is divisible in the sense required to trigger the modified categorical approach, so a review of the state-court charging document and Ellis's plea colloquy was appropriate—but only to determine which part of the Indiana

intimidation statute he was convicted of violating. As we have already noted, it is clear from these documents that Ellis was convicted under subsections (a)(2) and (c)(1) of the statute for threatening to "unlawfully injure" a law-enforcement officer, making his offense a felony under the penalty section of the statute. IND. CODE § 35-45-2-1(b)(1)(B)(i). The government maintains, and the Indiana district court held, that this crime "has as an element the . . . threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We disagree.

The Supreme Court's decision in *Johnson v. United States*, 130 S. Ct. 1265 (2010), provides the framework for determining whether a crime has as an element the use of physical force against another. The Supreme Court explained in *Johnson* that "in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1271 (citing *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003)). Applying this interpretation, the Court concluded that Florida's battery statute—which requires for conviction only intentional physical contact, no matter how slight, *see id.* at 1269-70—did not include as an element the use of physical force and therefore was not a violent felony under the ACCA. *Id.* at 1274.

If under Indiana law a threat to "unlawfully injure" another person includes only threats to inflict physical injury, then a violation of subsection (c)(1) of Indiana's intimidation statute has as an element the threatened

use of physical force, as required by the ACCA and explained in *Johnson*. Ellis argues, however, that the statute does not require a threat to inflict a *physical* injury, noting instead that a threat to "unlawfully injure" can be directed at either physical *or* nonphysical injuries, the latter including emotional or reputational harms. The government notes in supplemental briefing that most of the published Indiana cases analyzing convictions under subsection (c)(1) involve threats of physical force against others. *See, e.g.*, *Hyde v. State*, 531 N.E.2d 472, 473 (Ind. 1988) (shotgun owner's threat to "blow [officer] away"); *H.J. v. State*, 746 N.E.2d 400, 403 (Ind. Ct. App. 2001) (threat to put gun to another's head and pull trigger). But neither the language of the statute itself nor any Indiana case limits the reach of subsection (c)(1) to threats of physical injury. Indeed, Ellis has alerted us to one Indiana Supreme Court decision suggesting that subsection (c)(1) covers threats to inflict nonphysical injuries.

In *Meek v. State*, 185 N.E. 899 (Ind. 1933), the defendant threatened to disinter and sell the body of a widow's late husband unless she paid $200. Indiana charged the defendant with violating the then-operative blackmail statute, which criminalized "threat[s] to do any injury to the person or property of any one." *Id.* at 900. The defendant argued that the prosecution failed under the statute because he had not threatened to do any injury to the victim herself or to her property. The Indiana Supreme Court rejected this argument, instead concluding that "injury to the person" included "a threat to invade any right for the invasion of which an

action in damages would lie." *Id.* at 901. Thus, the court explained, "The damage that would result to a widow from disinterment, removal, or destruction of the body of her husband consists principally, at least, in physical and mental pain, anguish, and suffering, and to that extent is an 'injury to the person.'" *Id.*

*Meek* teaches that "an injury to the person" for purposes of Indiana's threat statute encompasses threats of physical *and* nonphysical injuries. Although subsection (c)(1) of the intimidation statute uses the term "unlawfully injure," the fact that the earlier *and* the current version of the statute use the word "injury" without any modifier is significant. An "injury" is "[t]he violation of another's legal right, for which the law provides a remedy," and can be either physical or nonphysical. BLACK'S LAW DICTIONARY 856 (9th ed. 2009). Moreover, the Indiana Code uses the phrases "bodily injury" and "serious bodily injury" to signify physical injuries. *See* IND. CODE §§ 35-41-1-4 (defining "bodily injury") & 35-41-1-25 (defining "serious bodily injury"); *see also* IND. CODE § 35-42-2-1(a) (using the terms in the battery statute). If the intimidation offense described in subsection (c)(1) of the statute were limited to threats of physical injury, it would use a term such as "bodily injury," as the Indiana Code does elsewhere when only physical injury is meant. Instead, the intimidation statute uses the general term "injure" and therefore applies more broadly to encompass threats to inflict "unlawful injury," whether physical or nonphysical.

The government contends that this interpretation is in direct tension with *United States v. Sperberg*, 432 F.3d

706, 707-08 (7th Cir. 2005), which held that a conviction under a similar Wisconsin statute was a violent felony. At issue in *Sperberg* was WIS. STAT. 943.30(1), which provides in relevant part: "Whoever . . . threatens or commits any injury to the person . . . of another . . . with intent to compel the person so threatened to do any act against the person's will or omit to do any lawful act, is guilty of a Class H felony." The defendant in *Sperberg* stole lobster tails from a grocery store, and while making his escape told a security guard to get out of his way, stating, "I've got a gun and I'll shoot you." Although noting that "Wisconsin equates physical and economic injury," we affirmed the district court's determination that Sperberg's crime was a "violent felony" because the defendant had threatened the guard with physical injury. *Id.* at 707-08.

Our later decision in *Woods* undermines *Sperberg* to the extent that its holding was premised on an examination of the specific facts underlying the defendant's conviction when the statute describing the crime is nondivisible. *Woods* specifically disavowed this understanding of the modified categorical approach. *See Woods*, 576 F.3d at 404 ("What the sentencing court *cannot* do is to look at the particular facts underlying the defendant's conviction."). Under the modified categorical approach, properly understood, the result in *Sperberg* would likely have been different; the opinion specifically noted that WIS. STAT. 943.30(1) permits prosecutions for threats to cause physical *and* nonphysical injuries. *Sperberg*, 432 F.3d at 708. *Sperberg* does not control the outcome here.

We hold that Ellis's conviction under IND. CODE § 35-45-2-1(a)(2) and (c)(1) is not a violent felony under the ACCA because it does not "ha[ve] as an element the . . . threatened use of physical force against the person of another." § 924(e)(2)(B)(i). This conclusion requires resentencing in the Indiana case. The government has not argued that Ellis's intimidation conviction qualifies as a violent felony under the ACCA's residual clause. *See id.* at § 924(e)(2)(B)(ii) (a crime is a "violent felony" if the crime "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"); *see also Begay v. United States*, 553 U.S. 137 (2008) (analyzing the residual clause). Neither district court considered this question, and by not advancing this alternative argument on appeal, the government has waived it. *See United States v. Knox*, 573 F.3d 441, 450 (7th Cir. 2009).

### 2. *Reasonableness of the Illinois Sentence*

Ellis's advisory guidelines range in the Illinois case was 46 to 57 months, but the district court imposed an above-guidelines sentence of 90 months in prison. The judge explained that Ellis's extensive criminal history justified a sentence above the recommended range, noting that Ellis's prior crimes were "potentially horrifying to the people involved" and that his earlier "ten-year time in jail did not deter [him] from committing crimes when he got out of jail." Ellis argues that 90 months is unreasonably high. The government argues that 90 months is unreasonably low. Our review is for an abuse of discre-

tion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "[W]e will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *United States v. McIntyre*, 531 F.3d 481, 483 (7th Cir. 2008) (per curiam).

Under the circumstances here, a 90-month sentence strikes us as quite lenient. Ellis is a former chief enforcer for a violent Chicago street gang, committed serious gun crimes, and has an appalling criminal record and an acknowledged history of torture and extortion. But the court's explanation for the sentence was adequate and grounded in an appropriate consideration of the § 3553(a) factors. That a longer sentence would have made sense does not make this sentence unreasonable. And the 90-month sentence is hardly unreasonably high, as Ellis contends. There was no abuse of discretion.

### III. Conclusion

For the foregoing reasons, the judgment in the Illinois case is AFFIRMED. Ellis's conviction on Count 9 in the Indiana case is REVERSED, but the remaining convictions are AFFIRMED. Ellis's sentence in the Indiana case is VACATED, and the case is REMANDED for resentencing consistent with this opinion.