In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2947

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JAMES K. TAYLOR,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-cr-150—**Robert L. Miller, Jr.**, *Judge*.

ARGUED DECEMBER 6, 2010—DECIDED DECEMBER 29, 2010

Before BAUER and WILLIAMS, *Circuit Judges*, and
MCCUSKEY, *District Judge*.[*]

WILLIAMS, *Circuit Judge*. James K. Taylor pleaded
guilty to being a felon in possession of a firearm in viola-
tion of 18 U.S.C. § 922(g)(1) and was sentenced to 64
months' imprisonment. His sentence was based in part

[*] The Honorable Michael P. McCuskey, United States District
Court for the Central District of Illinois, sitting by designation.

on the district court's conclusion that his prior Indiana conviction for Class C felony battery, Ind. Code § 35-42-2-1(a)(3), qualified as a "crime of violence" under § 4B1.2(a) of the federal sentencing guidelines, enhancing his recommended base offense level. Taylor appeals the district court's finding, arguing that his battery conviction was not a crime of violence for the purposes of the federal sentencing guidelines. We find that the Indiana battery offense of which Taylor was convicted—touching someone in a rude, insolent, or angry manner by means of a deadly weapon—qualifies as a crime of violence because such conduct will ordinarily involve, at a minimum, the threatened use of physical force. We affirm.

## I. BACKGROUND

Between May 2008 and October 2009, Taylor, a convicted felon, directed a third party to make straw purchases of nine firearms for him at a gun store in Mishawaka, Indiana. A store employee alerted an ATF agent to the suspected straw purchases, and Taylor was apprehended. He was indicted on November 12, 2009, and on February 19, 2010 pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] Taylor's criminal history

---

[1] Taylor was also charged with one count of aiding and abetting the furnishing of false and fictitious statements during the acquisition of a firearm, in violation of 18 U.S.C.

(continued...)

included a 2004 conviction for Class C felony battery in St. Joseph County (Indiana) Superior Court, for which he had received a sentence of four years' imprisonment. Indiana's battery statute, Ind. Code § 35-42-2-1, provides in relevant part:

> Sec. 1. (a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:
>
> . . .
>
> (3) a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon.

Specifically, the criminal information in Taylor's battery case stated that he "did knowingly touch [the victim] in a rude, insolent, or angry manner, to-wit: by striking [the victim] in the stomach and said touching being committed with a deadly weapon, to-wit: a knife." Taylor's presentence investigation report recommended that his base offense level under the guidelines—which would otherwise have been 14 per § 2K2.1(a)(6)—be increased to 20 on the basis that this prior battery conviction qualified as a "crime of violence." U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2(a). The district court agreed, concluding over Taylor's objection that the battery con-

---

(...continued)
§ 922(a)(6). This count was dismissed pursuant to his plea agreement.

viction qualified as a crime of violence under the guidelines. Coupled with a criminal history category of III, Taylor's resulting advisory guideline range was 57-71 months. The court imposed a sentence of 64 months and two years' supervised release.

## II. ANALYSIS

Taylor appeals the district court's conclusion that his Indiana battery conviction qualifies as a "crime of violence" for purposes of the federal sentencing guidelines. This is a question of law we review *de novo*. *United States v. Clinton*, 591 F.3d 968, 972 (7th Cir. 2010).

The guidelines define a "crime of violence" as any federal or state offense, punishable by more than a year of imprisonment, that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

We use a "categorical approach" to determine whether a given crime qualifies as a crime of violence. *United States v. Woods*, 576 F.3d 400, 403 (7th Cir. 2009). Under the categorical approach, courts look to the statutory definition of the offense in question, not to the specific

conduct that the defendant engaged in on that occasion. *Id.; see also Begay v. United States*, 553 U.S. 137, 141 (2008). "That is, we consider whether the *elements of the offense* are of the type that would justify its inclusion . . . without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007) (emphasis in original).[2]

When a statute describes multiple modes of commission, however, some that might be a crime of violence and some that might not, the categorical approach cannot answer the question completely because a court cannot tell from the statute itself exactly what offense the defendant committed. *See, e.g.*, *Fife*, 624 F.3d at 445; *United States v. McDonald*, 592 F.3d 808, 810 (7th Cir. 2010). In these cases involving a "divisible" statute, courts employ a "modified categorical approach" and look to a defendant's charging document, plea agreement, or other similar judicial record for the limited purpose of determining which part of the offense the prior conviction was for—but still *not* to the particular facts underlying the conviction. *See Shepard v. United States*, 544 U.S. 13,

---

[2] *Begay*, *James*, and other cases in this area apply the categorical approach to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), which defines "violent felony" virtually the same way § 4B1.2 defines "crime of violence." As we have done in prior cases, we refer to cases dealing with the ACCA and the career offender guideline provision interchangeably. *See United States v. Fife*, 624 F.3d 441, 444 n.1 (7th Cir. 2010).

26 (2005); *United States v. Ellis*, 622 F.3d 784, 798 (7th Cir. 2010). "[T]he additional materials . . . may be used only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime." *Woods*, 576 F.3d at 405 (emphases in original).

The district court—as well as both parties in their briefs on appeal—applied the modified categorical approach to Ind. Code § 35-42-2-1(a)(3), apparently premised on an assumption that the statute requires it. Clearly, § 35-42-2-1(a)(3) can be violated in one of two ways: touching someone in a rude, insolent, or angry manner that (1) "results in serious bodily injury to any other person" or (2) "is committed by means of a deadly weapon." And Taylor's charging document makes clear that he was convicted of the second category, the "means of a deadly weapon" violation. But the fact that § 35-42-2-1(a)(3) sets out two modes of commission doesn't automatically mean it is "divisible" in a way that requires a modified categorical approach— if *both* methods of violating the statute qualify as a crime of violence for federal purposes, there would be no need to look at Taylor's charging document for clarification at all. *See, e.g.*, *McDonald*, 592 F.3d at 810 (modified categorical approach necessary when statute lists multiple modes of commission, "some of which may be crimes of violence and some not."); *see also United States v. Dismuke*, 593 F.3d 582, 589 (7th Cir. 2010) (statute is divisible "when it describes multiple offense categories, some of which would be crimes of violence and some of which would not.").

The government does not argue, however, that either mode of violation of § 35-42-2-1(a)(3) would constitute a crime of violence, and instead proceeds on the assumption that the statute is in fact divisible. We will similarly approach the statute as being divisible for the purpose of deciding this appeal, and leave for another day the broader question of whether *any* violation of Indiana's Class C battery statute would qualify as a crime of violence. It may be the case that the other prong of § 35-42-2-1(a)(3)—touching someone in a rude, insolent, or angry manner that "results in serious bodily injury to another person" — does not categorically qualify as a crime of violence under either prong of the federal definition. *See, e.g.*, *Johnson v. United States*, --- U.S. ----, 130 S. Ct. 1265, 1271-72 (2010) ("touching" in Florida battery statute does not categorically equate to "physical force" necessary to qualify as a violent felony under first part of ACCA definition); *Flores v. Ashcroft*, 350 F.3d 666, 672 (7th Cir. 2003) ("touching" in Indiana misdemeanor battery statute includes any contact, however slight, and thus does not necessarily satisfy "physical force" requirement in analogous crime of violence definition in 18 U.S.C. § 16); *Begay*, 553 U.S. at 143-45 (residual clause in second part of crime of violence definition is limited to offenses similar both in kind and degree of risk to those enumerated, demonstrating the same "purposeful, violent, and aggressive" conduct); *Woods*, 576 F.3d at 407 (same).

So the question before us is whether violating Ind. Code § 35-42-2-1(a)(3) the way Taylor did—touching someone

in a rude, insolent, or angry manner, by means of a deadly weapon—qualifies as a crime of violence. We conclude that it does, because in the ordinary case, violating Indiana's Class C battery statute by touching someone in a rude, insolent, or angry manner with a deadly weapon will at the very least present a *threat* of physical force, thus qualifying it under § 4B1.2(a)(1) of the guidelines.[3]

Taylor argues that there are ways to touch someone in a rude, insolent, or angry manner using a deadly weapon that do *not* necessarily involve the use, attempted use, or threatened use of force. While there may be hypothetical situations where this might be true (one involving utensils at a particularly contentious Thanksgiving dinner came up during oral argument), such possibilities are outliers. In applying the categorical approach, we are concerned with the ordinary case, not fringe possibilities. *James*, 550 U.S. at 208 (categorical approach does not require that "every conceivable factual offense" qualify); *Woods*, 576 F.3d at 404. And we believe that in the ordinary case, touching someone rudely, insolently, or angrily with a deadly weapon involves, at a minimum, a threat of physical force.

---

[3] The government also advances two alternative bases for affirming: (1) that Taylor's offense meets the definition of "crime of violence" set forth in § 4B1.2(a)(2) as well; and (2) that the offense also qualifies because Application Note 1 to § 4B1.2 permits courts to look to actual charged conduct in making a crime-of-violence determination. Because we affirm on the basis of § 4B1.2(a)(1), we do not reach these alternative arguments.

Other circuits evaluating similar statutes have reached the same conclusion. In *United States v. Treto-Martinez*, 421 F.3d 1156 (10th Cir. 2005), the defendant challenged the classification of his prior conviction under Kansas's aggravated battery statute as a crime of violence. That statute prohibits, much like the Indiana law, "intentionally causing physical contact with another person when done in a rude, insulting or angry manner with a deadly weapon." Kan. Stat. Ann. § 21-3414(a)(1)(C). Applying the categorical approach, the Tenth Circuit found that touching someone with a deadly weapon in a rude, insulting, or angry manner "could always lead to more substantial and violent contact" and thus will always include "at the very least" the threatened use of physical force. *Treto-Martinez*, 421 F.3d at 1160; *see also United States v. Ramon Silva*, 608 F.3d 663, 672 (10th Cir. 2010) (applying similar reasoning to New Mexico aggravated assault statute). We agree with this reasoning and find it applicable to the Indiana statute here. Other circuits have similarly held that touching with a deadly weapon constitutes a "crime of violence" for the same reason. *See United States v. Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009) (California assault offense of touching someone with a deadly weapon qualifies as a crime of violence because it "demonstrates at a minimum the threatened use of actual force"); *United States v. Dominguez*, 479 F.3d 345, 348 (5th Cir. 2007) (Florida aggravated battery offense of intentionally touching someone with a deadly weapon qualifies because "the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence.").

We briefly address Taylor's argument that the district court improperly looked at the actual facts underlying his battery conviction in determining that it qualified as a crime of violence. A review of the sentencing hearing transcript reveals that Taylor is correct, although it does not affect the outcome here. In making a determination as to whether Taylor's conviction constituted a crime of violence, the district judge read the information in Taylor's battery case (which set forth the underlying fact that Taylor had committed the battery by striking someone with a knife) and stated:

> The Information in this case, however, charges striking, specifies striking, which is the use of physical force against the person of another, and accordingly, it appears to me that, even under the *Woods* decision . . . what we have here is a crime of violence because it involved the use of physical force against the person of another.

This was improper, because instead of using the charging document solely to determine which part of § 35-42-2-1(a)(3) Taylor had violated (i.e., causing serious bodily injury versus using a deadly weapon), the judge went further, looked at the actual facts of what Taylor had done, and focused on the "striking" in reaching a conclusion. This, as Taylor correctly points out, is exactly what *Woods* says a court cannot do in applying the modified categorical approach. *See Woods*, 576 F.3d at 404 ("[w]hat the sentencing court *cannot* do is to look at the particular facts underlying the defendant's conviction.") (emphasis in original). The error

was obviously harmless, however—despite making a misstep in how it got there, the district court reached the correct conclusion that Taylor's battery conviction qualifies as a crime of violence under § 4B1.2. *See Ellis*, 622 F.3d at 798.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.