# Illinois Official Reports

## Appellate Court

> ### *People v. Leavitt*, 2014 IL App (1st ) 121323

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JASON LEAVITT, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1323 |
| Filed | November 21, 2014 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the prosecution of a police officer for official misconduct and aggravated battery of two juveniles who allegedly threw an object that broke the rear window of his vehicle as he drove by the juveniles while off duty, the trial court erred in granting the officer's motion to dismiss the indictment charging him with those offenses on statute of limitations grounds, notwithstanding the fact that the indictment was returned just before the expiration of the three-year statute of limitations applicable to the offenses and was then sealed for 12½ months, since the date the indictment was returned was the date defendant's prosecution commenced and the sealing had no effect on compliance with the limitations period, especially when the indictment was sealed for the legitimate purpose of protecting a sensitive, ongoing investigation of a conspiracy within the police department to conceal the police officer's conduct in connection with a civil rights action based on the same incident, and the lengthy delay between sealing and unsealing the indictment did not result in any prejudice to the officer with respect to his rights to a speedy trial or due process; therefore, the cause was remanded for further proceedings. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-19688; the Hon. Nicholas Ford, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |
| | Law Office of Thomas P. Needham, of Chicago (Thomas P. Needham and Erin M. Levy, of counsel), for appellee. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Justices Lampkin and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State appeals an order entered in the circuit court of Cook County granting defendant Jason Leavitt's motion to dismiss his indictment pursuant to section 114-1(a)(2) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/114-1(a)(2) (West 2010)) on statute of limitations grounds. On October 26, 2009, Leavitt was indicted by a Cook County grand jury for the offenses of official misconduct (720 ILCS 5/33-3(b) (West 2006)) and aggravated battery (720 ILCS 5/12-4 (West 2006)) for the October 28, 2006, beating of two 15-year-old juvenile detainees. On that same date, the indictment was sealed and remained sealed until November 12, 2010. On appeal, the State contends the circuit court erred in dismissing the indictment on statute of limitations grounds where the indictment was properly returned prior to the expiration of the statutory period. The State further contends the subsequent sealing of the indictment had no impact on the date the indictment was returned for statute of limitations purposes. For the reasons that follow, we reverse the judgment of the circuit court and remand the cause for further proceedings.

¶ 2                                I. BACKGROUND
¶ 3    On October 26, 2009, the State charged Leavitt, a member of the Park Ridge police department, by indictment for the offenses of official misconduct and aggravated battery. That same day, the State filed a motion to seal the indictment pursuant to section 112-6(b) of the Code (grand jury statute) (725 ILCS 5/112-6(b) (West 2008)). The State presented the motion to the presiding judge of the criminal division and requested the indictment be sealed because there was an ongoing investigation into a conspiracy within the Park Ridge police department to conceal Leavitt's offense. The State argued that, due to the sensitive nature of the investigation, it would serve the interests of justice to seal Leavitt's indictment until the conspiracy investigation was complete. The presiding judge, after an *ex parte* hearing before a court reporter, granted the State's request and entered an order sealing the indictment.

¶ 4        On November 12, 2010, upon the State's motion, the presiding judge entered an order unsealing the indictment. Leavitt was subsequently arraigned on November 15, 2010.

¶ 5        On February 25, 2011, Leavitt filed a motion to dismiss the indictment pursuant to section 114-1(a)(2) of the Code (725 ILCS 5/114-1(a)(2) (West 2010)). Leavitt contended that because the indictment remained sealed until November 12, 2010, the prosecution of his case did not commence until after the applicable three-year statute of limitations period had expired (720 ILCS 5/3-5(b) (West 2006)). Leavitt further asserted the only legitimate reason indicated by the grand jury statute (725 ILCS 5/112-6(b) (West 2008)) for sealing an indictment is to secure a defendant's custody. Leavitt maintained there was no legal basis for sealing the indictment, as there was no indication he would flee or attempt to avoid apprehension.

¶ 6        In a June 2011 supplement to his motion to dismiss the indictment, Leavitt also argued the indictment should be dismissed because it infringed on his speedy-trial and due process rights under the sixth and fourteenth amendments of the United States Constitution (U.S. Const., amends. VI, XIV).

¶ 7        In response, the State asserted the sealing was necessary because the related conspiracy investigation was "very sensitive" as it involved members of the Park Ridge police department. The State also maintained Leavitt was indicted before the three-year statute of limitations had expired and, thus, prosecution had timely commenced.

¶ 8        Attached to the State's response was a transcript of the *ex parte* hearing regarding the motion to seal the indictment. Assistant State's Attorney (ASA) John Mahoney, who investigated Leavitt's case, stated the following at the hearing on the motion to seal. At 2 a.m. on October 28, 2009, Leavitt, who was off duty, was driving eastbound on Touhy Avenue in Park Ridge, when a projectile struck the back window of his vehicle, shattering it. Leavitt pulled his vehicle over and pursued on foot the three juveniles he believed were responsible for damaging his automobile. Leavitt apprehended one of the juveniles, clubbed him in the back of the head with an unknown object, straddled him, and punched him in the face. Another Park Ridge police officer arrived at the scene by police vehicle and placed the juvenile in handcuffs. As the other officer was leading the juvenile to the police vehicle, Leavitt struck the juvenile again.

¶ 9        The search resumed for the other juveniles. The two police officers cornered a second juvenile and placed him in handcuffs as he was facedown on a concrete driveway. While the juvenile was detained in this manner, Leavitt approached him and kicked him multiple times in the back of the head. Mahoney further testified, "We also have testimony some of the other officers joined in kicking this kid while he is down [in] handcuffs."

¶ 10       The second juvenile was thereafter placed into a police vehicle. Leavitt, the ranking officer at the scene, ordered another officer to open the back door of that police vehicle. Leavitt then reached into the police vehicle and punched the juvenile in the face "between five to ten times." The juvenile slid over to the other side of the backseat to avoid being struck by Leavitt. Leavitt then walked around the back of the police vehicle, opened the passenger door and "starts punching the kid again, choking him."[1]

---

[1]Only two juveniles were detained. The record does not disclose what, if anything occurred regarding the third juvenile.

¶ 11        ASA Mahoney informed the presiding judge:

"Since that time, judge, there's been a cover up launched in the Park Ridge Police Department from the then police chief ***, all the way down to the watch commander and the acting chief of the Park Ridge Police Department. We had a sergeant of police *** come forward and tell us basically everything that happened, although he was not a witness to most of what occurred, several of these officers out cried [*sic*] to him, they have now been subpoenaed to the Grand Jury with really disturbing results. *** [T]he first officer on the scene who pushed Leavitt off [the first juvenile victim], she came in the Grand Jury and took the fifth; she refused to answer questions, she was represented by the law firm ***.

Subsequent to that, every witness that we have had subpoenaed to come to the Grand Jury has been represented by the same law firm, we–and ***, who is a police officer present for the beatings and ***, another police officer who was present for the beatings, testified in the Grand Jury that nothing occurred, which is perjurious ***.

                ***

And I should point out that this did not come to us until about February of 2009 through an anonymous letter; so, things didn't even really start rolling until March or April; so, it's been very condensed, condensed investigation. We have had to move as quickly as possible. We brought this in house, we've had our own investigators doing it, but we're partnering up with the F.B.I. as well, and the investigation is ongoing into the charges of perjury, subornation of perjury, obstructing justice and conspiracy to commit all of those offenses. We're forced to indict Officer Leavitt as the statute of limitations−[*sic*]

COURT: Lieutenant Leavitt.

MR. MAHONEY: I'm sorry, Lieutenant Leavitt, as the statute of limitations runs out on October 27th, that being tomorrow, the incident having occurred early morning hours of October 28th, 2006; so, we have had to indict him.

We are asking you, judge, to seal this indictment because in the interest of justice, I think pretty compellingly point that this open investigation should be allowed to continue, and I don't think that in the end there will be any prejudice to any of the parties.

There's been a civil lawsuit pending in this matter throughout, so, the evidence has been alive and been kicking around for two years and nobody's memory, you know, on the defense side as opposed is getting short; so weighing all those factors, judge, and under [section] 112-6(b), I believe it is, you have the authority to order the sealing of the indictment and through this motion the People of the State of Illinois ask you to do so today.

[ASA] BLAKEY: Additionally, Your Honor, the charges that we're seeking, the return on, are inextricably intertwined with the ongoing covert phases of the investigation as to the obstruction of justice and perjury counts; so, we would not be able to return a simple indictment on these and then a superseding indictment without compromising the investigation in the absence of a sealing order."

¶ 12    The presiding judge rendered the following finding:

> "The Court finds and accepts the claim made in this motion, due to the sensitive nature of this investigation, certainly sensitive as pointed out by Mr. Mahoney and Mr. Blakey, it would serve in the interest of justice, the bill of indictment against the defendant, Lieutenant Leavitt, not be made public until such time as co[-]conspiring defendants are in custody. And on that basis, I will sign this order and direct that copies of this motion be held by the State's Attorney's Office as well as the order, and that this transcript be sealed and not divulged to anyone."

¶ 13    In reply to the State's response to his motion to dismiss the indictment, Leavitt maintained the prosecution of this matter had not commenced within the three-year statute of limitations. Leavitt, relying on federal authority, argued an indictment may be kept secret for a limited time period but only where the government establishes a legitimate prosecutorial objective for sealing his indictment. Leavitt asserted that the State here was merely seeking to build a stronger case against him, which was not a legitimate prosecutorial objective for sealing his indictment. Leavitt also requested an evidentiary hearing on his motion.

¶ 14    On November 16, 2011, an evidentiary hearing on the motion to dismiss the indictment commenced. Leavitt testified on his own behalf to the following facts. He is currently a lieutenant with the Park Ridge police department. In 2009, he and other police officers were involved in a federal civil case regarding the October 2006 incident. The city of Park Ridge hired attorney Michael Kujawa to represent the officers, including Leavitt, in that suit. In September 2009, he attended a settlement conference with all parties to the suit. At this point, Leavitt was not aware of any criminal charges against him. At the settlement conference, an attorney for one of the juveniles stated she "had been assured by her sources within the Cook County State's Attorney's Office that charges in this case were imminent, criminal charges were imminent." As a result of those statements, he contacted his defense counsel.

¶ 15    In October of 2009, after the statute of limitations had passed, Leavitt was "greatly relieved." He continued his work with the Park Ridge police department and took over the command of the Northern Illinois Police Alarm System Emergency Services Team (SWAT team). Leavitt waited to remodel his home until after the statute of limitations expired. In 2010, the addition to his home was completed and resulted in a higher mortgage on his home. Leavitt would not have incurred this debt had he known he would be charged with a crime. After he was arrested, Leavitt resigned from the SWAT team to avoid any additional embarrassment.

¶ 16    On cross-examination, Leavitt testified that in addition to working as a lieutenant for the Park Ridge police department, he maintained four other jobs. In February 2009, he heard rumors that his coworkers at the Park Ridge police department were being called to testify in front of the grand jury regarding the October 2006 incident. He acknowledged that he actually did not resign from the SWAT team after his arrest, but changed his position from the commander to lead team commander.

¶ 17    The defense rested and the State called ASA Mahoney, a deputy supervisor of the "public corruption/financial crime/mortgage fraud and money laundering unit." In February of 2009, he received an anonymous letter which stated that within the Park Ridge police department there was "a scandal and a cover-up regarding two 15 year olds who had been arrested, handcuffed, and then beaten." ASA Mahoney learned of the federal lawsuit and contacted

one of the plaintiff's counsel. Plaintiff's counsel confirmed all the facts that were stated in the letter.

¶ 18 ASA Mahoney then served a subpoena on plaintiff's counsel and received the nonprivileged portion of her file, which included statements in the form of deposition transcripts of the two juveniles. Pursuant to subpoena, ASA Mahoney interviewed an officer who had not witnessed the beatings, but was the "outcry witness" for the officers who did.[2] This officer's interview was consistent with his later testimony before the grand jury in October 2009. ASA Mahoney then interviewed three other officers who were eyewitnesses to the incident. One declined to testify before the grand jury. ASA Mahoney believed the other two witnesses perjured themselves with their grand jury testimony.

¶ 19 Thereafter, ASA Mahoney enlisted the Federal Bureau of Investigation (FBI) to assist in the investigation, as he believed the incident amounted to a civil rights case. The FBI initiated its investigation in September 2009. The investigation revealed that Kujawa, a former Park Ridge police officer, held a "ducks-in-a-row meeting" in response to the filing of the civil lawsuit in 2007, a year and a half before the criminal investigation had commenced. Everyone who was on shift on the night of the October 2006 incident was gathered into a room with several members of their command staff and Leavitt. According to ASA Mahoney's testimony, Kujawa looked at everyone in the room and said, "Leavitt says he never touched the kid." ASA Mahoney further stated Kujawa said, "anybody got anything different to say or words to that effect." ASA Mahoney described the meeting as, "kind of intimidating and that was the beginning of the conspiracy."

¶ 20 Regarding the motion to seal the indictment, ASA Mahoney testified he presented the motion to the presiding judge in his chambers. ASA Mahoney explained that the reasons for the State's request to seal the indictment were set forth in both the written motion and during the oral presentation before the presiding judge. ASA Mahoney testified he informed the judge:

> "We had come into this case very, very late in time because nobody came forward and it was only on accident that we learned about it. And so we only had nine months or so to run this down.
>
> And in the nine months, we had enough *** evidence to charge Mr. Leavitt; but it became pretty clear to everybody that there was a cover-up conspiracy going on. And for those reasons, we needed to indict Mr. Leavitt before the statute of limitations ran[,] which would have been the following day and that we didn't want one to interfere with the other. We didn't want the indicted case to interfere with the cover-up investigation."

¶ 21 After the indictment was sealed, ASA Mahoney focused on investigating the conspiracy case against the Park Ridge police department. Each person thought to be part of or have knowledge of the conspiracy had retained an attorney and would not speak with him. On January 28, 2010, the State issued a subpoena to the Park Ridge police department for documents relevant to the conspiracy investigation. Twelve boxes of documents were recovered from the Park Ridge police department.

---

[2]The record contains no definition of the phrase "outcry witness."

¶ 22    Thereafter, five individuals were interviewed regarding the October 2006 incident. ASA Mahoney discovered the Park Ridge police department did not conduct an internal investigation regarding the incident at issue.[3] ASA Mahoney also learned that anonymous, threatening letters were received by the mother of one of the juveniles from an address which was the Park Ridge Country Club. The investigation had revealed a connection between the Park Ridge Country Club and some of the police officers of the Park Ridge police department.[4] In April 2010, two more Park Ridge police officers were interviewed.

¶ 23    In November 2010, ASA Mahoney requested the indictment be unsealed because "we didn't want it hanging out there so long that there would be an issue of fairness to anybody. So the prospects of unsealing the indictment and having the case go forward interfering with whatever investigation continued, they seemed less important than it was to unseal the indictment so the case could proceed." The investigation into the conspiracy, however, continued. Ultimately no charges were filed.

¶ 24    On cross-examination, ASA Mahoney testified that Leavitt was involved in a separate incident wherein he was accused of beating up a janitor at Maine South High School where Leavitt worked part-time. The beating was allegedly in retaliation for the janitor informing the school that Leavitt did not come to work but was paid for that time.

¶ 25    ASA Mahoney could not recall whether Leavitt was represented by counsel at the time of the indictment. After being presented with a letter written by Leavitt's counsel addressed to the "Chief of the Special Prosecutions Bureau of the State's Attorney's Office," ASA Mahoney remembered he had read the letter prior to presenting the motion to seal. ASA Mahoney did not inform the presiding judge Leavitt was represented by counsel because "it was an ex-parte [*sic*] proceeding and it wasn't relevant" and that "it never occurred to us that we had a duty to inform the judge." At the hearing on the motion to seal, ASA Mahoney did not give the presiding judge a time line or an expectation as to when the conspiracy investigation would be concluded. Additionally, he did not report the status of the investigation while the indictment was sealed to the presiding judge. There was also no information uncovered during the conspiracy investigation that led ASA Mahoney to believe Leavitt was a flight risk.

¶ 26    FBI special agent Eugene H. Jackson testified he was part of the team that investigated the conspiracy allegations surrounding the Park Ridge police department. The investigation was "long term," from September 2009 to December 2010, with a "plethora of documents and records." At most, the investigative team conducted three interviews a month, as it wanted to be "very careful and very methodical" and was "developing witnesses." Each witness had to be carefully approached in a manner that would protect the integrity of the investigation. After November 2010, the investigation went "quite a bit further" and "was still evolving." Jackson further testified the length of the investigation was typical due to the sensitivity of the case.

---

[3]One interview with a Park Ridge police officer revealed defendant in a separate incident allegedly apprehended a juvenile who was ringing an elderly person's doorbell in the middle of the night. Defendant then "beat him [the juvenile] up." Defendant "was able to keep himself off the police report" because another officer was written up as being the arresting officer.

[4]The record does not indicate what the connection was.

¶ 27    On cross-examination, Jackson testified "still evolving" meant "following leads wherever they lead." Jackson could not recall whether the unsealing of Leavitt's case made his still-evolving investigation more difficult or problematic. Jackson further testified that no one from the State's Attorney's office contacted the FBI regarding the unsealing of Leavitt's case, but permission from the FBI was not necessary for the State to unseal it. Jackson also believed "absolutely" that Leavitt would harm someone or be a threat to the public if he found out about the investigation.

¶ 28    On February 24, 2012, the circuit court heard arguments and took the matter under advisement. On March 8, 2012, the circuit court issued its ruling on Leavitt's motion to dismiss the indictment. The circuit court acknowledged that the Illinois case law pertaining to the sealing of the indictment under section 112-6(b) of the Code was "practically non-existent" but stated, "the Illinois Supreme Court has recognized that Rule 6E [*sic*] of the Federal Rules of Criminal Procedure was the model for the Illinois provision."

¶ 29    The circuit court established that the statute of limitations requires "an indictment be found within a specific period of time, and an indictment is generally found when it is returned by the grand jury and filed." Relying on federal case law, the circuit court explained:

> "When a defendant challenges the decision to seal an indictment after it has been unsealed, the burden is on the State to establish a legitimate reason for sealing of the indictment. If the government cannot justify the sealing of the indictment, the expiration of the limitation period prior to the unsealing would result in dismissal of the indictment as it would in any case in which an indictment is untimely.
>
>     Even if the State has a legitimate prosecutorial purpose for sealing the indictment, the State must unseal the indictment as soon as it's [*sic*] legitimate need for the delay has been satisfied."

¶ 30    The circuit court then examined federal appellate cases that considered the issue and indicated those courts had ruled that "the judge may grant the State's request to seal an indictment for any legitimate prosecutorial objective or where the public otherwise requires it." The circuit court found the cases of *United States v. Gigante*, 436 F. Supp. 2d 647 (S.D.N.Y. 2006), and *United States v. Rogers*, 781 F. Supp. 1181 (S.D. Miss. 1991), to be similar to the case at bar. The circuit court stated these cases stood for the proposition "that the government sealing of the indictment to gather initial evidence was not a legitimate prosecutorial objective."

¶ 31    Regarding the case at bar, the circuit court found "that the government's desire to complete its investigation of related charges is not a legitimate prosecutorial objective, and *** in addition, the State's proper justification[s] were insufficient to establish a legitimate prosecutorial objective to seal the indictment." The court went on to express that even if the State's justifications were legitimate, the year which passed between the expiration of the statute and the unsealing was "unduly delayed." The circuit court further advised the State that its failure to bring forth any further need for sealing the indictment was to Leavitt's detriment and seemed "to fall on the face of due process."

¶ 32    Thereafter, the State filed its motion to reconsider. On April 13, 2012, after hearing arguments, the circuit court denied the motion. On April 20, 2012, the State filed its timely notice of appeal.

¶ 33                                    II. ANALYSIS

¶ 34        On appeal, the State contends the circuit court's order dismissing the indictment on statute of limitations grounds was in error because: (1) the return of defendant's indictment commenced defendant's prosecution before the statute of limitations expired; and (2) the sealing had no effect on the return of the indictment and compliance with the limitations period. In response, Leavitt argues: (1) his prosecution was not commenced within the statute of limitations because the indictment was kept secret; (2) an indictment may be sealed under section 112-6(b) of the grand jury statute only to effectuate the arrest of a defendant; and (3) his constitutional rights to a speedy trial and due process were violated by the sealing of the indictment and the subsequent delay in unsealing it. We review each argument in turn.

¶ 35                               A. Standard of Review

¶ 36        We review a motion to dismiss an indictment on statute of limitations grounds *de novo*. *People v. Macon*, 396 Ill. App. 3d 451, 454 (2009); *People v. Mann*, 341 Ill. App. 3d 832, 836 (2003); *People v. Carini*, 357 Ill. App. 3d 103, 112-13 (2005). Further, this appeal involves statutory interpretation, which we similarly review *de novo*. *People v. Lloyd*, 2013 IL 113510, ¶ 25.

¶ 37                               B. Statute of Limitations

¶ 38        We will first address whether the State complied with the applicable statute of limitations. The State asserts the prosecution of Leavitt's case was timely commenced as defendant's indictment was returned within the three-year statute of limitations period for a felony offense (720 ILCS 5/3-5(b) (West 2006)), and, therefore, the circuit court improperly granted Leavitt's motion to dismiss the indictment.

¶ 39        A statute of limitations "is by definition an arbitrary period after which all claims will be cut off." *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 448 (2005). "A statute of limitation in criminal cases is an act of grace; a surrendering by the sovereign of its right to prosecute." *People v. Ross*, 325 Ill. 417, 421 (1927). "The purpose of providing limitations periods for offenses is to minimize the danger of punishment for conduct that occurred in the distant past, to encourage the State to be diligent in its investigation and to provide the trier of fact with evidence that is fresh and not distorted or diluted by the passage of time." *Macon*, 396 Ill. App. 3d at 456.

¶ 40        Illinois's general statute of limitations provides:

            "(b) Unless the statute describing the offense provides otherwise, or the period of limitation is extended by Section 3-6, a prosecution for any offense not designated in Subsection (a) must be commenced within 3 years after the commission of the offense if it is a felony, or within one year and 6 months after its commission if it is a misdemeanor." 720 ILCS 5/3-5(b) (West 2006).

Our legislature has defined the term "prosecution" to mean "all legal proceedings by which a person's liability for an offense is determined, commencing with the return of the indictment or the issuance of the information, and including the final disposition of the case upon appeal." 720 ILCS 5/2-16 (West 2006). In Illinois, a felony prosecution may occur either by grand jury indictment or a prompt preliminary hearing. Ill. Const. 1970, art. I, § 7 (no one

"shall be held to answer for a crime punishable *** by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause"); 725 ILCS 5/111-2(a) (West 2006) (felony prosecutions "shall be by information or by indictment"). Under established Illinois law, "the date the indictment is found or the information is filed marks the commencement of the felony prosecution and stops the running of the statute of limitations." *People v. Herndon*, 105 Ill. App. 3d 167, 169 (1982); *Macon*, 396 Ill. App. 3d at 456.

¶ 41    In the present matter, the alleged offense was committed on October 28, 2006. The grand jury indicted Leavitt on October 26, 2009. No questions have been raised as to the grand jury proceeding and return of the indictment. Accordingly, we find the indictment was timely found within the three-year statute of limitations. See *Herndon*, 105 Ill. App. 3d at 169; *Macon*, 396 Ill. App. 3d at 456.

¶ 42                    C. The Effect of Sealing on a Timely Filed Indictment

¶ 43    Leavitt argues his prosecution was not "commenced" within the statute of limitations because his indictment was kept secret from him. Leavitt further asserts that by sealing the indictment and waiting to prosecute, the State undermined the purpose behind the statute of limitations.

¶ 44    The State responds that the sealing of an indictment has no effect on the statute of limitations. Specifically, the State asserts the plain language of section 112-6(b) (725 ILCS 5/112-6(b) (West 2008)) does not provide that the sealing of defendant's indictment impacts the date the indictment was returned. According to the State, the circuit court erroneously relied on federal case law in rendering its determination and that even if this court were to consider federal authority, we should employ the approach used in *United States v. Thompson*, 287 F.3d 1244 (10th Cir. 2002), and conclude that the sealing of the indictment had no effect on when the indictment was returned for statute of limitations purposes.

¶ 45    The portion of the grand jury statute that provides for the sealing of an indictment states:

"The court may direct that a Bill of Indictment be kept secret until the defendant is in custody or has given bail and in either event the clerk shall seal the Bill of Indictment and no person shall disclose the finding of the Bill of Indictment except when necessary for the issuance and execution of a warrant." 725 ILCS 5/112-6(b) (West 2008).

It is well settled that issues of statutory construction are questions of law subject to *de novo* review. *Lloyd*, 2013 IL 113510, ¶ 25. The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent. *People v. Whitney*, 188 Ill. 2d 91, 97 (1999). "The best indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *People v. Jamison*, 229 Ill. 2d 184, 188 (2008). In determining the plain meaning of the statute, we consider the subject the statute addresses and the legislative purpose in enacting it. *People v. Dominguez*, 2012 IL 111336, ¶ 16. Where statutory provisions are clear and unambiguous, the plain language as written must be given effect, without reading into it exceptions, limitations, or conditions that the legislature did not express. *People v. Wright*, 194 Ill. 2d 1, 29 (2000). A court may not inject provisions that are not found in a statute. *People v. Roberts*, 214 Ill. 2d 106, 116 (2005). Furthermore, our

supreme court has repeatedly held that statutes should be read as a whole and construed so that no part is rendered meaningless or superfluous. *Lloyd*, 2013 IL 113510, ¶ 25.

¶ 46    Leavitt argues that his prosecution was not commenced within the statute of limitations because the indictment was kept secret from him. He requests we "adopt a rule" that the State cannot keep an indictment secret after the passage of the statute of limitations. Leavitt asks us to ignore the long-standing case law of this state which holds that a felony prosecution is commenced when the indictment is found. See *Herndon*, 105 Ill. App. 3d at 169; *Macon*, 396 Ill. App. 3d at 456. There is, however, nothing in the plain language of the statute of limitations which differentiates a sealed indictment from any other indictment. See 720 ILCS 5/3-5(b) (West 2008). Nor is there any language in the grand jury statute which states that a sealed indictment affects the date an indictment is returned for statute of limitations purposes. See 725 ILCS 5/112-6(b) (West 2008). Accordingly, we reject Leavitt's argument.

¶ 47    In finding that Leavitt's indictment, although sealed, complied with the statute of limitations, we acknowledge that federal courts are split on whether sealing is relevant to whether the limitation period has run. See *United States v. Ellis*, 622 F.3d 784, 792 (7th Cir. 2010) (discussing split in authority). One line of federal case law has held that an indictment is "found" for purposes of the statute of limitations when it is returned by the grand jury and that the sealing of the indictment has no impact on that date. *United States v. Thompson*, 287 F.3d 1244, 1248-52 (10th Cir. 2002); *United States v. Michael*, 180 F.2d 55, 56 (3d Cir. 1949). The rationale for this holding is that "[t]he language of 18 U.S.C. § 3282 [(the federal statute of limitations)] mentions nothing about the sealing of an indictment, nor does it include a tolling provision." *Thompson*, 287 F.3d at 1250. In addition, "[t]he grand jury's determination of whether or not to 'find' an indictment does not depend on whether the indictment is sealed." *Id.* at 1250-51. Thus, the return of indictment is the grand jury's function and what the court subsequently does with it is irrelevant. See *id.* at 1251; *Michael*, 180 F.2d at 56. Other federal courts, however, have held that an indictment is not "found" for purposes of the statute of limitations if it was improperly sealed and the sealing prejudiced the defendant. See *United States v. Bracy*, 67 F.3d 1421, 1426 (9th Cir. 1995); *United States v. Sharpe*, 995 F.2d 49, 51-52 (5th Cir. 1993); *United States v. Muse*, 633 F.2d 1041, 1043-44 (2d Cir. 1980).

¶ 48    We are only obliged to follow the decisions of the Supreme Court of Illinois and of the United States Supreme Court, as both of these tribunals exercise appellate jurisdiction over the Appellate Court of Illinois. *Occhino v. Illinois Liquor Control Comm'n*, 28 Ill. App. 3d 967, 971 (1975). Therefore, we are not bound to follow decisions by federal courts other than the United States Supreme Court. *People v. Battiste*, 133 Ill. App. 2d 62, 65 (1971). Such decisions may, however, be considered persuasive authority. *Pielet v. Pielet*, 2012 IL 112064, ¶ 39; *Wilson v. County of Cook*, 2012 IL 112026, ¶ 30. Based on the plain language of our statutes and Illinois case law that the return of the indictment commences prosecution for statute of limitations purposes, we find the first line of federal cases more persuasive. Our statute of limitations similarly makes no reference to the sealing of an indictment, nor does it provide a tolling provision for when an indictment is sealed. Accordingly, we conclude the sealing of an indictment has no effect on the statute of limitations.

¶ 49    Nevertheless, even if we were persuaded by the reasoning of the other line of federal cases, the sealing was not improper and did not prejudice Leavitt, as we will discuss herein.

¶ 50                    D. Whether the Indictment Was Properly Sealed

¶ 51    Although we have found that the prosecution was commenced within the statute of limitations and that the sealing of the indictment had no effect on the return of the indictment for statute of limitations purposes, Leavitt contends that the sealing of the indictment was improper and that the circuit court correctly dismissed the indictment on that basis. Leavitt makes two arguments regarding the propriety of the sealing of the indictment: (1) the sealing violated the grand jury statute; and (2) the sealing violated his constitutional rights.

¶ 52                                  1. The Grand Jury Statute

¶ 53    Leavitt argues that under the grand jury statute (725 ILCS 5/112-6(b) (West 2008)) the only proper reason to seal an indictment is to allow law enforcement to arrest a defendant. Leavitt maintains that because he was not a flight risk and could have been arrested at any time, the sealing of the indictment was improper and the circuit court properly dismissed it. In the alternative, Leavitt asserts that in dismissing the indictment the circuit court correctly relied on federal authority, which requires the State to establish a "legitimate prosecutorial purpose" for the sealing and correctly found the State here had no "legitimate prosecutorial purpose" for sealing the indictment.

¶ 54    The State argues under the plain language of section 112-6(b), the presiding judge has discretion to order the sealing and the circuit court failed to give that decision proper deference. In addition, the State asserts the circuit court erroneously relied on federal case law in dismissing the indictment where the language of section 112-6(b) is clear.

¶ 55    We initially note that Leavitt has failed to provide us with any Illinois authority that suggests an indictment can be dismissed based solely on the impropriety of the sealing of an indictment. Although such a lack of authority is typically grounds for forfeiture, our research has uncovered no case law interpreting section 112-6(b) in the context of a motion to dismiss an indictment. Despite a wealth of case law regarding the dismissal of an indictment pursuant to section 114-1(a)(5) of the Code (725 ILCS 5/114-1(a)(5) (West 2008)) based on prosecutorial misconduct and other issues occurring during the grand jury proceedings (see *People v. DiVincenzo*, 183 Ill. 2d 239 (1998); *People v. Fassler*, 153 Ill. 2d 49 (1992)), there is no Illinois case law on point that directly addresses whether a defendant may move to dismiss an indictment based on its improper sealing. Nonetheless, a circuit court may exercise its right to dismiss an indictment outside the situations listed in section 114-1 of the Code when a failure to do so will effect a deprivation of due process or result in a miscarriage of justice. *People v. Ziobro*, 242 Ill. 2d 34, 44 (2011). We acknowledge that we have already determined that the sealing of an indictment has no effect on the return of the indictment for statute of limitations purposes. Nevertheless, assuming for the sake of argument that a defendant can move to dismiss an indictment solely on the grounds that the sealing was improper, we conclude the sealing was proper and Leavitt was not prejudiced by the sealing. In reaching this conclusion, we first consider the purpose and plain language of section 112-6(b) of the grand jury statute.

¶ 56    "A grand jury is organized for the purpose of protecting citizens from unfounded accusation as well as investigating charges of crime and returning indictments thereon." *People v. Munson*, 319 Ill. 596, 604 (1925). Since its inception, the grand jury statute has required secrecy during grand jury proceedings, particularly in regard to the results of those grand jury proceedings. See 1951 Laws 1849, § 1; 725 ILCS 5/112-6(b) (West 2008). "In

Illinois, the purpose of secrecy surrounding grand jury proceedings is to prevent the escape of those under indictment, to insure the grand jury freedom in its deliberations, to prevent subornation of perjury, to encourage disclosure by witnesses, and to protect the innocent from unwarranted exposure." *In re Extended March 1975 Grand Jury No. 655*, 84 Ill. App. 3d 847, 851 (1980). "[T]he purpose of secrecy is designed to assure freedom of deliberation of *future* grand juries, and the participation of *future* witnesses, as well as to provide these assurances to those who appeared before the instant proceeding." (Emphases added.) *People v. French*, 61 Ill. App. 2d 439, 442 (1965). Thus, the secrecy surrounding grand jury proceedings is not just to effectuate the arrest of a defendant, but is also as a whole "fundamental to our criminal procedure." *Id.* at 441. Reading the grand jury statute as a whole, as we must, it is apparent that secrecy is not limited to merely the proceedings and deliberations of the grand jury, but also extends to the indictment itself, where, in section 112-6(b) the legislature has provided the court with the authority to seal an indictment. *Lloyd*, 2013 IL 113510, ¶ 25; 725 ILCS 5/112-6(b) (West 2008).

¶ 57        The plain language of section 112-6(b) provides a court "may" direct that an indictment be sealed, thereby granting a court the discretion in the decision as to whether to seal the indictment. Section 112-6(b) also provides that the indictment be kept secret until it is necessary to issue a warrant and the defendant is in custody, or is given bail. 725 ILCS 5/112-6(b) (West 2008). The grand jury statute does not set forth any standards or guidelines for the determination of whether to seal an indictment, but instead leaves the sealing in the court's discretion. See *People v. Murphy*, 102 Ill. App. 3d 448, 452 (1981) (finding that statutory criteria was unnecessary where the legislature "intended only that the court act fairly and impartially with regard to the decision to transfer a juvenile to adult facilities under [sections 3-10-7(a) and 5-8-6(c) of the Unified Code of Corrections]").

¶ 58        Leavitt suggests a limitation on the court's authority to seal an indictment which is contrary to the plain language of section 112-6(b). Leavitt emphasizes the portion of section 112-6(b) that says, "[t]he court may direct that a Bill of Indictment be kept secret *until* the defendant is in custody or has given bail." (Emphasis added.) 725 ILCS 5/112-6(b) (West 2008). Leavitt interprets this language to mean that the only reason for the sealing of an indictment is to effect an arrest on an individual who is a flight risk. Leavitt's argument misinterprets the statute's durational requirement as a limitation on the court's authority to seal an indictment. When reading section 112-6(b) in its entirety, as we must, the word "until" means the language that follows provides a point in time when the indictment may no longer be a secret, for example, when the defendant is in custody or given bail. The statute does not place any restrictions on the court's authority and discretion to seal an indictment. As we cannot read exceptions into the grand jury statute that the legislature did not express, we reject defendant's interpretation of section 112-6(b) of the grand jury statute. See *Michael*, 180 F.2d at 57 (finding that under Federal Rule of Criminal Procedure 6(e)(4) an indictment may be kept secret during the time it takes to bring a defendant into custody, but that secrecy may also be imposed "in other circumstances which in the exercise of a sound discretion [the court] finds call for such action").

¶ 59        Defendant's argument is contrary to the overall purpose of the grand jury statute. As previously discussed, read *in pari materia*, the purpose of secrecy within the grand jury statute is not merely to bring a defendant into custody, but also serves a larger purpose. Where, as here, the State sought to seal an indictment in order to investigate a possible

- 13 -

conspiracy relating to Leavitt's charges, it was not outside of the presiding judge's discretion to grant that request.

¶ 60    Having concluded that the presiding judge had discretion to seal the indictment, we next consider whether the court abused that discretion. The abuse of discretion standard of review is the most deferential and is "traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial." *In re D.T.*, 212 Ill. 2d 347, 356 (2004). Under this standard, an abuse occurs when the circuit court's ruling is fanciful or unreasonable or when no reasonable person would adopt the trial court's view. *People v. Baez*, 241 Ill. 2d 44, 106 (2011).

¶ 61    There is no Illinois case law regarding how to determine whether the circuit court abused its discretion in sealing an indictment. The parties, however, have cited federal case law interpreting and applying Federal Rule of Criminal Procedure 6(e)(4), which states in relevant part:

> "The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue a warrant or summons."

In that the federal sealing rule is similar to section 112-6(b), federal law interpreting the rule, although not binding, may be persuasive or helpful. See *People ex rel. Sears v. Romiti*, 50 Ill. 2d 51, 55, 59 (1971) (considering federal authority in interpreting whether section 112-6(b) allows a court to conduct a hearing to receive the testimony of grand jurors concerning charges that relate to the demeanor of a prosecutor while examining witnesses before the grand jury and to the quality of his argument or advice to them); *Pielet*, 2012 IL 112064, ¶ 39; *Wilson*, 2012 IL 112026, ¶ 30.

¶ 62    Even though the federal courts differ in their approaches, a majority of these courts give the magistrate judge's determination "great deference" and apply an abuse of discretion standard of review. See *United States v. Srulowitz*, 819 F.2d 37, 41 (2d Cir. 1987); *United States v. DiSalvo*, 34 F.3d 1204, 1219 (3d Cir. 1994) (applying abuse of discretion standard); *United States v. Sharpe*, 995 F.2d 49, 52 (5th Cir. 1993) (great deference); *United States v. Wright*, 343 F.3d 849, 856 (6th Cir. 2003) (great deference); *United States v. Ellis*, 622 F.3d 784, 793 (7th Cir. 2010) (great deference); *United States v. Lakin*, 875 F.2d 168, 172 (8th Cir. 1989) (great deference); *United States v. Edwards*, 777 F.2d 644, 648 (11th Cir. 1985) (great deference). The rationale for this deferential standard of review is "to place sealing in the hands of a judicial officer rather than as theretofore in those of a prosecutor." *United States v. Southland Corp.*, 760 F.2d 1366, 1380 (2d Cir. 1985). Such a standard of review also allows the government, "except in the most extraordinary cases, to rely on that decision rather than risk dismissal of an indictment, the sealing of which it might have been willing to forego, because an appellate court sees things differently, after the expenditure of vast resources at trial and at a time when reindictment is by hypothesis impossible." *Id.*

¶ 63    Leavitt argues the circuit court correctly relied on the line of federal cases which holds that where the sealing is challenged, the government must establish a "legitimate prosecutorial purpose" for the sealing.

¶ 64    While we acknowledge that when the sealing of an indictment is challenged by a defendant in federal court, a majority of those courts require the prosecutor to establish that the sealing is based on a "legitimate prosecutorial purpose" or in the public interest, we

decline to adopt that standard.[5] We find no reason to ignore the plain language of section 112-6(b), which clearly provides the court with the discretion to grant or deny the sealing of an indictment. 725 ILCS 5/112-6(b) (West 2008). As discussed, we will not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with the legislature's expressed intent. *Wright*, 194 Ill. 2d at 29. In the absence of the legislature stating an indictment may be sealed only when the State demonstrates a "legitimate prosecutorial purpose" in requesting the sealing, we decline to read one into the statute. See *id.* Furthermore, this federal standard has not been expressly adopted or found to be applicable by our supreme court or any reviewing court of this state. While we decline to expressly adopt the federal standard, that does not mean that the State's motivations in requesting the sealing of an indictment are entirely irrelevant. This is a consideration a circuit court may weigh when determining whether to seal an indictment and a consideration for the reviewing court when determining whether there has been an abuse of discretion as to the sealing.

¶ 65    Here, the presiding judge did not abuse his discretion when he ordered Leavitt's indictment be sealed. The State provided the presiding judge with a written motion setting forth the reasons for requesting that the indictment be sealed. Specifically, that sealing would protect a sensitive, ongoing investigation into a conspiracy within the Park Ridge police department to conceal Leavitt's conduct on October 26, 2006. In addition, the State verbally provided more details regarding the request at the hearing before the presiding judge. ASA Mahoney revealed that the investigation was being conducted with the FBI and information was being gathered as to the possible conspiracy. ASA Mahoney also informed the presiding judge that he believed sealing Leavitt's indictment would be in the interests of justice. Further, ASA Mahoney stated that Leavitt was currently involved in a civil cause of action regarding this same incident and that Leavitt would not be prejudiced by the delay. The court, in granting the motion, set forth its reasons for its decision to seal the indictment. The decision was based on detailed information, which established the need for secrecy, and was not made in a perfunctory manner. Accordingly, we find the presiding judge did not abuse his discretion in sealing Leavitt's indictment.

¶ 66    Furthermore, should we apply the federal standard requiring that the State establish a legitimate prosecutorial purpose or that the sealing was in the public interest, we would find

---

[5]See, *e.g.*, *Sharpe*, 995 F.2d at 52 (indictment properly sealed when the government request is based on any legitimate prosecutorial objective or where the public interest otherwise requires it); *United States v. Richard*, 943 F.2d 115, 118-19 (1st Cir. 1991) (same); *Lakin*, 875 F.2d at 171 (same); *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir. 1986) (an indictment may be sealed "for any legitimate prosecutorial need" and that such need "is not confined simply to the need to take the defendant into custody"). There are various legitimate prosecutorial objectives which have been found to justify the sealing of an indictment: (1) an ongoing investigation into a related conspiracy count (*United States v. Bracy*, 67 F.3d 1421, 1426-27 (9th Cir. 1995)); (2) a public indictment would make it harder to obtain complete and truthful testimony from a witness (*Southland Corp.*, 760 F.2d at 1378); (3) to avoid compromising an unrelated trial (*DiSalvo*, 34 F.3d at 1219); (4) it would disclose the identities of the witnesses (*Ramey*, 791 F.2d at 318, 323); (5) to avoid compromising an ongoing, unrelated investigation and to protect a confidential informant (*Wright*, 343 F.3d at 858); (6) for the security of the witnesses and to guard against potential witness intimidation or tampering (*Ellis*, 622 F.3d at 793); and (7) to toll the running of the statute of limitations (*Edwards*, 777 F.2d at 648-49).

that standard was met here. The sealing furthered and protected the State's investigation as to the existence of a conspiracy or cover-up within the Park Ridge police department. The decision to seal the indictment served both the interest of the public in the integrity of a local police force and the legitimate need to avoid a compromise of an ongoing federal and state investigation.

¶ 67    Leavitt primarily relies upon *United States v. Gigante*, 436 F. Supp. 2d 647 (S.D.N.Y. 2006), to support his argument that the sealing of the indictment did not have a legitimate prosecutorial purpose. We find this reliance to be misplaced.

¶ 68    In *Gigante*, the district court considered whether the statute of limitation was affected by the sealing of the original and superseding indictments. *Id.* at 650. There, the defendant was charged with making false statements, fraudulent concealment, and income tax evasion after the government commenced its investigation into the defendant sometime in 2000. *Id.* The defendant was first indicted in November 2003, one day before the statute of limitations was to expire. *Id.* Four superseding indictments were filed over the next 21 months, each adding counts against the defendant shortly before the applicable statutes of limitations were about to expire. *Id.* at 650-51. Each indictment was sealed by five different magistrate judges. *Id.* at 652. The government, however, did not inform any of the magistrate judges of the basis for its request for the sealing and there was no record of any of these proceedings. *Id.* The indictments were unsealed and the defendant was arrested in August 2005. *Id.* at 651. Throughout this time the defendant was generally aware that the government was investigating him. *Id.*

¶ 69    It was only in its response to the defendant's motion to dismiss the indictments that the government set forth its reasons for requesting the indictments be sealed. *Id.* at 652. Those reasons were: (1) it did not want to compromise an ongoing tax evasion investigation into the defendant; (2) it needed additional time to allow for the Department of Justice and the IRS to complete their review of the defendant's tax evasion charge; (3) it needed more time to conduct an investigation to support the forfeiture of the defendant's assets; and (4) it had a general concern that the defendant was a flight risk. *Id.* at 652-53.

¶ 70    Considering Federal Rule of Criminal Procedure 6(e)(4) and federal case law interpreting that rule, the district court explained that, generally, when a timely filed sealed superseding indictment is not unsealed until after the expiration of the statute of limitations, the statute is ordinarily not a bar to prosecution, as the statute is generally tolled as of the date the first indictment is filed. *Id.* at 654. However, there are exceptions to that rule including if the government "lacks a proper purpose in sealing the indictment, the indictment is considered to be found upon the date of its unsealing." *Id.* The burden is then on the government to establish legitimate reasons for sealing the indictment. *Id.* If the government cannot meet this burden, the indictment must be dismissed as though it were untimely. *Id.* at 654-55.

¶ 71    The district court concluded that the government did not have a legitimate prosecutorial purpose for sealing the indictments. *Id.* at 659. Specifically, the district court found that (1) secrecy was not crucial to the tax evasion investigation; (2) the defendant was not a flight risk as his whereabouts were never unknown and he notified the authorities when he traveled outside of the jurisdiction; and (3) a legitimate prosecutorial purpose does not include the need for additional time to decide whether to bring additional charges against a defendant. *Id.* at 657-58. The district court further noted that there was no decision of a magistrate judge to which the court could defer. *Id.* at 658.

¶ 72    *Gigante*, however, is distinguishable from the case at bar. In the present case, the State appeared before the presiding judge, presented him with a written motion, and argued the motion on the record. The motion and record of proceedings establishes that when the State requested the indictment be sealed, it was not seeking to gather additional evidence against Leavitt, but instead requested the indictment be sealed due to a sensitive, ongoing investigation into a conspiracy within the Park Ridge police department. The State disclosed the sensitive nature of the conspiracy investigation and the reasons why it was imperative that defendant's indictment be sealed. The presiding judge agreed, stating, "The Court finds and accepts the claim made in this motion, due to the sensitive nature of [the conspiracy] investigation *** it would serve in the interest of justice, the bill of indictment against defendant, Lieutenant Leavitt, not be made public until such time as co[-]conspiring defendants are in custody." Whereas the *Gigante* court found it impossible to give deference to the magistrate judges because the record did not include their determinations, in this case, we have a complete record detailing the State's reasons for its request and the presiding judge's determination. More important than the factual distinctions between the present case and *Gigante*, is that our statute expressly provides that the court has discretion in determining whether to seal an indictment and this discretion is not limited by the State setting forth a "legitimate prosecutorial purpose."

¶ 73    In conclusion, we find the prosecution here was timely commenced when the indictment was found within the three-year statute of limitations period and the sealing had no effect on the statute of limitations. Moreover, the court did not abuse its discretion in sealing the indictment pursuant to section 112-6(b) of the grand jury statute. As will be discussed, Leavitt was also not prejudiced by the sealing of the indictment. For these reasons, we conclude the circuit court erred in granting defendant's motion to dismiss on statute of limitations grounds and the dismissal cannot be supported on Leavitt's contention there was a violation of the grand jury statute. Accordingly, we now turn to address the constitutional issues raised by Leavitt in support of the dismissal of his indictment.

¶ 74                              2. Constitutional Considerations

¶ 75    The circuit court did not dismiss Leavitt's indictment specifically on constitutional grounds; rather, the circuit court found the length of time between the sealing and unsealing of the indictment to be "unduly delayed." The grounds for dismissing an indictment under section 114-1 of the Code (725 ILCS 5/114-1 (West 2010)) are not limited to those included in section 114-1. *Ziobro*, 242 Ill. 2d at 44 ("we have recognized a circuit court's right to exercise its authority to dismiss outside of the situations listed in section 114-1 only when failure to do so will effect a deprivation of due process or result in a miscarriage of justice" (internal quotation marks omitted)). We now address whether the length of time between the sealing and unsealing of the indictment infringed on Leavitt's constitutional rights.

¶ 76                              a. Leavitt's Right to a Speedy Trial

¶ 77    The State contends Leavitt's constitutional right to a speedy trial was not violated in this case. The State concedes the 12½-month delay may be presumptively prejudicial; however, the delay was justified and Leavitt failed to establish actual prejudice as a result of the delay.

¶ 78      In response, Leavitt asserts the 12½-month delay between the filing of the indictment and its unsealing was unduly lengthy and prejudiced him. Defendant specifically asserts he was prejudiced because: (1) he made changes in his personal and professional life based on the expiration of the statute of limitations; and (2) the passage of time had an effect on the memories of the witnesses.

¶ 79      Both the United States Constitution under the sixth amendment and the Constitution of Illinois under article I provide that the right to a speedy trial is a fundamental right. See U.S. Const., amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial"); Ill. Const. 1970, art. I, § 8 ("[i]n criminal prosecutions, the accused shall have the right *** to have a speedy public trial by an impartial jury"). This right benefits both the accused and society as a whole. *Barker v. Wingo*, 407 U.S. 514, 519 (1972).

¶ 80      Our supreme court has recognized that delay between the filing of a complaint, or other form of accusation, and the informing of a defendant of the charges against him through the arrest process could possibly so prejudice a defendant as to violate his right to a speedy trial. *People v. Love*, 39 Ill. 2d 436, 442 (1968). Under the sixth amendment, the State has a "constitutional duty to make a diligent, good-faith effort" to locate and apprehend a defendant and bring him to trial. *Smith v. Hooey*, 393 U.S. 374, 383 (1969). The right to a speedy trial, however, is not subject to a specific time limitation within which a defendant must be tried. *People v. Fly*, 249 Ill. App. 3d 730, 733 (1993). "When resolving a constitutional speedy-trial claim, any factual determinations made by the trial court, which are contained in the record, shall be upheld on review unless they are against the manifest weight of the evidence." *People v. Crane*, 195 Ill. 2d 42, 51 (2001). However, "the ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to *de novo* review." *Id.* at 52.

¶ 81      In assessing a constitutional speedy-trial claim, there are four factors that must be balanced in order to determine whether a defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the defendant's assertion of the right; (3) the reasons for the delay; and (4) the prejudice to the defendant.[6] *Barker*, 407 U.S. at 530; *People v. Bazzell*, 68 Ill. 2d 177, 182 (1977). "Once the [*Barker*] factors have been considered, 'courts must still engage in a difficult and sensitive balancing process.' " *Crane*, 195 Ill. 2d at 60 (quoting *Barker*, 407 U.S. at 533). Each factor must be weighed and considered in light of the circumstances of the case as reflected in the record. *Bazzell*, 68 Ill. 2d at 182-83. We note, however, that "[a]ll four factors are closely related" and no one factor is dispositive. *Crane*, 195 Ill. 2d at 52. Because "a certain amount of delay is 'inevitable and wholly justifiable' [citation], a speedy-trial inquiry will not be triggered unless the complained-of delay crosses the threshold from ordinary to ' "presumptively prejudicial." ' [Citations.]" *Crane*, 195 Ill. 2d at 52. Thus, the first factor we consider is the length of the delay. *Id.*

---

[6]The State correctly points out in its reply brief that defendant cites the factors set out in *People v. Lawson*, 67 Ill. 2d 449, 459 (1977), to establish a violation of speedy-trial rights. *Lawson*, however, regarded preindictment delay, not postindictment delay, which is at issue in the present case. In fact, the *Lawson* court stated there was no right to a speedy trial when the delay was preindictment delay, as the prosecution of the defendant had not yet commenced. *Id.* at 458 ("delay before an indictment or arrest does not raise any issue of speedy trial under the sixth amendment").

¶ 82    "In general, courts have recognized a delay approaching one year to be 'presumptively prejudicial.'" *Crane*, 195 Ill. 2d at 52-53 (quoting *Barker*, 407 U.S. at 530-31). A finding of presumptive prejudice, however, does not imply that the delay will be found to have actually prejudiced the defendant. Rather, it simply marks the point at which courts deem the delay unreasonable enough to trigger the full *Barker* inquiry. *Crane*, 195 Ill. 2d at 53; *People v. Prince*, 242 Ill. App. 3d 1003, 1008 (1993).

¶ 83    In the present case, the indictment was sealed for 12½ months and thus delayed Leavitt's arrest by that period of time. As the delay exceeded one year, it is presumptively prejudicial and is sufficient to trigger a speedy-trial analysis. See *Crane*, 195 Ill. 2d at 53.

¶ 84    Having decided that a speedy-trial inquiry has been triggered, we turn our attention to the second *Barker* factor, the reason for the delay. See *Barker*, 407 U.S. at 530; *People v. Belcher*, 186 Ill. App. 3d 202, 206 (1989). The burden to provide a justifiable reason for the delay rests with the State. *Prince*, 242 Ill. App. 3d at 1008. As our supreme court explained in *Crane*:

> "Reasons which may be offered to explain a delay are assigned different weight. [Citation.] For example, evidence that the State intentionally delayed prosecution to gain some tactical advantage will weigh very heavily against the State. [Citation.] Other more neutral reasons, such as a crowded court docket [citation], faulty police procedure, negligence, or incompetence [citations], though still charged against the State, will be weighed less heavily. [Citation.] Other reasons for delay, such as the unavailability or inability to locate a competent witness [citation], or a judge's illness [citation], are generally held to be valid explanations, justifying a reasonable period of delay." *Crane*, 195 Ill. 2d at 53-54.

While a deliberate attempt on the part of the State to delay a prosecution to hinder the defense will be weighed heavily against the State, even a neutral reason must also be weighed against the State rather than the defendant. *Belcher*, 186 Ill. App. 3d at 206. A defendant need only show that the delay was not attributable to his actions. *Prince*, 242 Ill. App. 3d at 1009.

¶ 85    The State contends the delay here was based on the sensitive, ongoing conspiracy investigation of the Park Ridge police department. The record supports this claim. The record demonstrates that it was not until February 2009, when the State's Attorney's office received an anonymous letter, that the State first became aware of the October 2006 incident. The subsequent investigation led to an interview of a police sergeant who informed ASA Mahoney that several officers had "out cried" to him regarding Leavitt's misconduct during the October 2006 detention of the two juveniles. After the grand jury subpoenas were served, however, certain officers refused to answer any questions or gave testimony contrary to that of the sergeant.

¶ 86    In October 2009, after the indictment was found, at the hearing on the motion to seal, the State revealed it was "partnering up with the F.B.I., and the investigation is ongoing into the charges of perjury, subornation of perjury, obstructing justice and conspiracy to commit all of those offenses." ASA Mahoney further stated, "the charges that we're seeking [as to Leavitt] *** are inextricably intertwined with the ongoing covert phases of the investigation as to the obstruction of justice and perjury counts [regarding the Park Ridge police department]." In addition, in October 2009 a civil federal lawsuit was pending against Leavitt regarding the October 2006 incident.

¶ 87    After the indictment was sealed, ASA Mahoney issued subpoenas to the Park Ridge police department for documents relevant to the conspiracy investigation. He also interviewed seven individuals over the course of several months. FBI special agent Eugene Jackson testified he participated in the "long term" investigation into the conspiracy allegations surrounding the Park Ridge police department. Jackson testified that he had to be "very careful and very methodical" in order to develop the witnesses and protect the integrity of the conspiracy investigation. Jackson investigated the matter from September 2009 until December 2010, and testified this length of time was typical for such a sensitive case. Jackson also believed "absolutely" that Leavitt would harm someone or be a threat to the public if he found out about the investigation. Based on the record, we find the State has met its burden of providing justification for the delay which occurred and that this factor weighs against Leavitt. See *Crane*, 195 Ill. 2d at 53.

¶ 88    Having considered the reasons for the delay, we consider the third *Barker* factor–Leavitt's assertion of his right to a speedy trial. Leavitt cites cases that involve the failure by defendants to make speedy-trial demands because they were unaware the State had brought charges. See, *e.g.*, *People v. Jennings*, 11 Ill. App. 3d 940, 943 (1973) (defendant not aware of charges until he was arrested 258 days later); *People v. Yaeger*, 84 Ill. App. 3d 415, 418 (1980) (defendant charged with drug offenses but did not learn of charges until arrested 31 months later); *People v. Gulley*, 83 Ill. App. 3d 1066, 1072 (1980) (time between defendant's unknown indictment and arrest was 42 months). In such circumstances, courts find that a defendant cannot be blamed for failing to pursue a speedy-trial claim and consider the third factor of the *Barker* analysis to be irrelevant. *People v. Williams*, 299 Ill. App. 3d 143, 149 (1998). Accordingly, we find that this factor is irrelevant because the indictment was sealed and Leavitt was unaware of the charges and could not have asserted his right to a speedy trial. See *People v. Singleton*, 278 Ill. App. 3d 296, 300 (1996) (holding this factor is irrelevant " 'where the defendant did not know about the charges against him' " (quoting *People v. Chambers*, 258 Ill. App. 3d 73, 80 (1994)); see also *United States v. Marion*, 404 U.S. 307, 321 (1971) (declining to extend the right to a speedy trial to the period prior to arrest because until an arrest occurs "a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer").

¶ 89    The fourth and final consideration is prejudice to the defendant. In assessing prejudice to the accused, the court must consider the interests sought to be protected by the speedy-trial right: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of the anxiety and concern of the accused; and (3) the limitation of the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *People v. O'Quinn*, 339 Ill. App. 3d 347, 356 (2003). Out of these three interests, the Court in *Barker* noted that the third one is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Where the length of delay is close to the minimum that is generally sufficient to trigger judicial review, "a more particularized showing of prejudice must be shown." *People v. Lock*, 266 Ill. App. 3d 185, 192 (1994) (defendant's speedy-trial rights were not violated where defendant was aware of charges during the delay of 11 months but made no particular showing of prejudice).

¶ 90    In the present case, Leavitt was not incarcerated during the 12½ months before the indictment was unsealed. The record does not indicate whether Leavitt suffered any anxiety

as to the accusations during the time the indictment was sealed. See *Marion*, 404 U.S. at 320 (indicating the speedy-trial provision is an important safeguard to minimize anxiety and concern accompanying public accusation). Therefore, the only remaining aspect of this factor to consider is whether the 12½-month delay prejudiced Leavitt's defense. Because the 12½-month delay was only two weeks removed from the minimum to trigger the presumption, a more particularized showing of prejudice must be demonstrated by defendant. See *Lock*, 266 Ill. App. 3d at 192. Leavitt does not assert his defense was impaired. See *Barker*, 407 U.S. at 532. Instead, Leavitt asserts that he "made changes to his personal and professional life" after the statute of limitations ran based on his belief that he would not be charged. The record, however, demonstrates Leavitt accepted a promotion with the SWAT team and made home renovations. Neither of these facts illustrates how Leavitt's defense was prejudiced by the delay in unsealing the indictment.

¶ 91    Leavitt only vaguely asserts "the passage of time has an effect on memories." We find this vague assertion, without more, insufficient to establish prejudice for speedy-trial purposes. See *Chambers*, 258 Ill. App. 3d at 81 ("Few, if any, cases do not have witnesses whose memories are not impaired by the passing of time to some degree."); *Marion*, 404 U.S. at 326 (the possibility that "memories will dim" is not itself "enough to demonstrate that appellees cannot receive a fair trial"); *United States v. Muse*, 633 F.2d 1041, 1044 (2d Cir. 1980) (prejudice due to memory loss is "more difficult to establish *** than the prejudice resulting from the more usual grounds such as the death or disappearance of a witness or the loss of physical evidence"). In any event, the record reflects there was ongoing civil litigation regarding the October 2006 incident, which likely preserved the evidence and the memories of those involved. We find this factor weighs in favor of the State.

¶ 92    Based on the record, we find the 12½-month delay between the indictment and Leavitt's arrest was justified. Moreover, Leavitt has failed to set forth any particular reasons, either in the circuit court or in his brief on appeal, as to why his defense would be impaired by the delay. A balancing of the *Barker* factors leads this court to conclude that the defendant was not deprived of his constitutional right to a speedy trial. The dismissal of the indictment against Leavitt cannot be upheld on this ground.

¶ 93                                    b. Due Process

¶ 94    The State contends the trial court's determination that the unsealing of the indictment was "unduly delayed" was in error and that the delay in unsealing the indictment did not violate Leavitt's due process rights. In his response brief, Leavitt argues his due process rights were violated and urges this court to apply the *Lawson* test and affirm the dismissal of the indictment. In reply, the State asserts that because this case involves postindictment delay, neither the fifth amendment nor the *Lawson* test is applicable to this matter.

¶ 95    A trial court has the inherent power to dismiss an indictment where a clear denial of due process has occurred. *People v. Hruza*, 312 Ill. App. 3d 319, 322 (2000). The power, however, should be used with great restraint and only when a violation is clearly established. *People v. Torres*, 245 Ill. App. 3d 297, 300 (1993). In cases involving *preindictment* delay, the *Lawson* test is utilized to determine whether a due process violation occurred. *Lawson*, 67 Ill. 2d at 459. This test involves a two-step process to ascertain both the substantial prejudice and reasonableness of the delay, which is then balanced with the interests of the defendant and the public. *Id.* In contrast, in cases involving *postindictment* delay the *Lawson* test is

inapplicable. *Belcher*, 186 Ill. App. 3d at 205. This is because "the sixth amendment right to a speedy trial is applicable to undue delays occurring after defendant is first accused of [a] crime by a personal restraint upon him through arrest or by the filing of an indictment, information or complaint charging him with the offense." *People v. Schroeder*, 102 Ill. App. 3d 133, 136 (1981).

¶ 96    Leavitt relies on *People v. Gulley*, 83 Ill. App. 3d 1066, 1069 (1980), which applied the *Lawson* test to postindictment delays. The later cases of *Schroeder* and *Belcher*, however, expressly indicate the *Lawson* test is inapplicable to postindictment delays. *Schroeder*, 102 Ill. App. 3d at 136; *Belcher*, 186 Ill. App. 3d at 205; *cf. People v. Overturf*, 122 Ill. App. 3d 625, 627 (1984) (finding that cases involving preindictment delay do not "come within the purview of the Sixth Amendment and [are] governed by the separate standards found in the *Lawson* opinion").

¶ 97    Leavitt contends the circuit court properly dismissed the indictment because his due process rights were violated by the State's postindictment delay in unsealing the indictment. Because we have already addressed Leavitt's delay arguments as they relate to the sixth amendment and determined his speedy-trial rights were not violated, we need not consider Leavitt's delay arguments in terms of a due process violation. See *Schroeder*, 102 Ill. App. 3d at 136; *Belcher*, 186 Ill. App. 3d at 205.

¶ 98                                    III. CONCLUSION

¶ 99    For the reasons stated above, the judgment of the circuit court of Cook County is reversed and the cause is remanded.

¶ 100    Reversed and remanded.